OPINION JUDGMENT ENTRY
{¶ 1} Defendants Farley D. and Joyce C. Amos, dba, Mohican Organic Products appeal a summary judgment of the Court of Common Pleas of Ashland County, Ohio, granted in favor of plaintiff Ohio Farm Bureau Federation, Inc. on its complaint for foreclosure on property owned by appellants in Ashland County, Ohio. Appellants assign five errors to the trial court:
 {¶ 2} "I. The trial court erred as a matter of law by denying Amos' motion to dismiss the farm bureau complaint for failure to state a claim upon which relief can be granted because the debt instrument is void and unenforceable under the doctrines of champerty or maintenance.
 {¶ 3} "II. The trial court erred by granting summary judgment to the farm bureau where there were material questions of fact as to whether the loan agreement and mortgage were part of a transaction which was void under the doctrines of champerty or maintenance.
 {¶ 4} "III. The trial court erred by granting summary judgment to the farm bureau on the loan agreement and ordering foreclosure of the mortgage because there are questions of fact as to whether the payment obligations were in default, and if they were, whether the farm bureau had waived its default rights or was estopped from exercising any default rights.
 {¶ 5} "IV. The trial court erred by granting summary judgment for the reason there were material questions of fact as to the amount amos owed the farm bureau.
 {¶ 6} "V. The trial court erred as a matter of law by granting the Farm Bureau's motion for summary judgment on Amos' counterclaim."
 {¶ 7} Appellants' statement pursuant to Loc. App. R. 9 states summary judgment was inappropriate both as a matter of law and because the case presents genuine issues of material fact.
 {¶ 8} Certain facts are undisputed. In 1979, appellants started a peat mining operation on a small bog area on their 123 acre farm. For 13 years, appellants mined peat on the property under a permit issued by the Ohio Department of Mines. In the fall of 1992, the U.S. Army Corp. of Engineers issued a stop order on appellants' mining operation, because the mining operation might violate the Clean Water Act. Appellants applied for a mining permit from the Ohio EPA, but the Ohio EPA denied it. Appellants' administrative appeal was unsuccessful.
 {¶ 9} On November 12, 1993, appellants filed a Chapter 11 Bankruptcy petition. From 1993 to 1995, appellants were able to sell peat that had been previously harvested, or purchased from third parties, to keep their business going. Appellants' petition in bankruptcy blocked a sheriff's sale of their farm scheduled for November 15, 1993.
 {¶ 10} On March 3, 1995, appellants wrote a letter to a Farm Bureau Trustee explaining their situation with the Ohio EPA and U.S. Army Corp. of Engineers, and asked for any help the Farm Bureau could give them. Eventually, appellants received a permit to mine peat in a restricted fashion in 1996.
 {¶ 11} In spite of obtaining the permit to mine, appellants were not able to resume mining peat on their property because of financial constraints and because their mining equipment had deteriorated during the stop-order. On October 16, 1996, appellants and the Farm Bureau entered into an agreement to assist appellants to re-start their business.
 {¶ 12} The parties executed a loan agreement, mortgage note, and mortgage on March 16, 1996. The loan agreement provided the Farm Bureau would loan appellants up to $300,000 to pay off their creditors from the bankruptcy and to re-start their business. Part of the $300,000 would be used to pay a $25,000 retainer to the law firm Bricker Ecklar to enable appellants to bring a "takings" lawsuit against the government. The loan agreement and the mortgage note both state the Ohio Farm Bureau Federation is interested in establishing a valuable legal precedent in the area of "takings law", and the Farm Bureau believed appellants' situation was an example of a regulatory taking requiring compensation under the Ohio and United States Constitutions.
 {¶ 13} The agreement to advance the $25,000 retainer to Bricker Ecklar provided any additional legal fees would be paid on a contingent fee contract between Bricker Ecklar and appellants. The agreement provided that an additional retainer might be paid, but only with appellants' prior approval. The parties agreed the approval would not be unreasonably held. The parties further agreed appellants would not settle or dismiss the "takings" case without first consulting the Ohio Farm Bureau Federation.
 {¶ 14} The contract called for interest at 8% per annum, calculated annually, from the date the money was advanced. The contract listed six "payment dates", when appellants must begin to re-pay the principle and interest. Those payment dates are:
 {¶ 15} A. Upon settlement of the "Takings" claim, all unpaid interest and principle shall be immediately due and payable.
 {¶ 16} B. Upon a monetary judgment in favor of the appellants and after the expiration of any applicable time provisions for appeal, all unpaid interest and principle shall be immediately due and payable.
 {¶ 17} C. Upon a sale, exchange or other disposition of all or any portion of the real estate, all unpaid interest and principle shall be immediately due and payable.
 {¶ 18} D. In the event the appellants mine peat from any or all portions of the real estate, they will begin repayment of loan advances in the amount of 10% of the gross proceeds from the sale of peat until such time as the unpaid interest and principle are paid in full.
 {¶ 19} E. In the event there is no recovery of a monetary judgment, a recovery of a monetary judgment in an amount insufficient to repay the loan, or no permission to mine peat is obtained, all unpaid interest and principle will become due and payable six months after the final appeal is exhausted. The contract provided the parties agreed to review any options available in order to reduce the negative impact on appellants.
 {¶ 20} F. In all events,[sic] all unpaid principle and interest shall be due and payable in full not later than October 31, 2006.
 {¶ 21} Before appellants could file their "takings" action, the United States District Court for the District of Columbia issued a decision in American Mining Congress v. United StatesArmy Corp. of Engineers, 951 F. Supp. 267 (D.D.C. 1997). The District Court invalidated the rule under which the EPA and Corp. of Engineers prohibited appellants' mining operation. The D.C. Circuit Court of Appeals affirmed the District Court's decision.
 {¶ 22} Following the District Court's ruling, appellants' counsel advised appellants the decision would likely have an effect on their ability to mine peat and on the continued viability of their "takings" claim. Appellants discussed with counsel whether they could pursue a temporary "takings" claim for the period the government had prohibited them from mining any peat at all. Counsel advised appellants the claim involved considerable cost and expense, and presented possible statute of limitations and failure to exhaust administrative remedies problems. Appellants then submitted a new permit application on November 24, 1997.
 {¶ 23} In December of 1997, the Ohio EPA and the Corp. of Engineers advised appellants they needed a Section 401 Water Quality Certification before the Corp. of Engineers could issue the permit. By June of 1998, appellants had still not applied for the Section 401 Water Quality Certification. Meanwhile, the Ohio EPA advised it was still trying to assess the impact of the federal case on state programs. On October 15, 1998, the Ohio EPA notified appellants their mining permit was still under consideration, but it would not bring any enforcement action against appellants for their proposed mining operation. On October 26, 1998, the Corp. of Engineers informed appellants' counsel appellants could begin harvesting peat without a permit if they could do so in a one-step process. Appellants mined peat without any permit, and without any interference from the Ohio EPA or the Corp. of Engineers for a short time. Appellant Farley Amos testified appellants stopped mining peat because they ran out of funds, and because they discovered it was much more difficult to harvest peat from the large bog than it had been from the small bog they had originally mined.
 {¶ 24} Appellants did not make any payments on the note, and the Farm Bureau filed its complaint for foreclosure on the mortgage. The Farm Bureau alleged it advanced over $500,000 to appellants.
 {¶ 25} The original complaint for foreclosure was filed on August 28, 2002. Appellants filed an answer but did not assert any counterclaims. During the pendency of that case, appellants filed a petition for bankruptcy relief in the Northern District of Ohio.
 {¶ 26} On August 15, 2003, the United States Bankruptcy Court dismissed appellants' bankruptcy petition. On August 21, 2003, the trial court dismissed the Farm Bureau's original complaint without prejudice, in deference to the federal court proceedings, apparently unaware the bankruptcy action had been dismissed. On September 16, 2003, the Farm Bureau re-filed its foreclosure action, and appellants' answer included a counterclaim against the Farm Bureau arguing it had breached its obligations under the promissory agreement.
 {¶ 27} Civ. R. 56 (C) states in pertinent part:
 {¶ 28} Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
 {¶ 29} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, Hounshell v. American States InsuranceCompany (1981), 67 Ohio St. 2d 427. A trial court may not resolve ambiguities in the evidence presented, Inland RefuseTransfer Company v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St. 3d 321. Only factual disputes which affect the outcome of the suit preclude the entry of summary judgment, and factual disputes which are irrelevant or unnecessary are not material, and do not prohibit entry of a summary judgment, FifthThird Bank v. Reddish (September 25, 2002), Medina Appellate No. 02CA0016, 2002-Ohio-5030. This court reviews a summary judgment using the same standard as the trial court, Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St. 3d 35.
 I II {¶ 30} In their first two assignments of error, appellants urge the entire transaction with the Farm Bureau was illegal and unenforceable under the Doctrines of Champerty or Maintenance.
 {¶ 31} Contracts involving Champerty or Maintenance are void and unenforceable, Rancman v. Interim Settlement FundingCorporation, 99 Ohio St. 3d 121, 2003-Ohio-2721,789 N.E. 2d 217. Maintenance is rendering assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case, while Champerty is a form of Maintenance in which a non-party undertakes to further another person's interest in a suit in exchange for a share if a favorable result ensues, Id. Appellants urge the purpose of this agreement between the parties was to assist appellants in pursuing a lawsuit, in which the Farm Bureau did not have an interest, except that it wanted to establish a rule of law helpful to its members. Appellants argue Farm Bureau selected the law firm, and maintained control over the legal action. Pursuant to the contract, Farm Bureau would not advance any additional retainer beyond the $25,000 without appellants' written approval, but the contract required the approval not be unreasonably withheld. In addition, appellants agreed they would not settle or dismiss their case without first consulting the Farm Bureau.
 {¶ 32} Appellants argue it was illegal for the Farm Bureau to advance funds to initiate a lawsuit and to keep appellants' business afloat.
 {¶ 33} Farm Bureau replies the agreement between the parties does not constitute Maintenance or Champerty because appellants were obligated to repay the loan regardless of the outcome of the case. Had the contract made repayment of the advanced funds contingent on the outcome of the case, or based upon a percentage of the proceeds, then the contract would be illegal. The contract provides the parties could "review all options available" to reduce the negative impact on appellants if their lawsuit yields no monetary judgment or a judgment insufficient to repay the loan, but, it does not make repayment of the loan contingent upon the success of the lawsuit or the amount of the repayment contingent upon the size of the recovery.
 {¶ 34} We find the agreement between the parties is not a Maintenance contract or a Champerty contract, and is not void as a matter of law.
 {¶ 35} The first and second assignments of error are overruled.
 III {¶ 36} In their third assignment of error, appellants argue there were questions of fact as to whether they were in default, and, if they were, whether Farm Bureau waived its rights or was estopped from exercising any default rights.
 {¶ 37} Basically, appellants argue none of the triggering events have occurred requiring them to begin repaying the loan. There has been no settlement of the "takings" claim and no monetary judgment. There has been no sale of any of the real estate encumbered by the mortgage. Sub-paragraph E provides if there is no recovery of a monetary judgment, or no permission to mine peat as obtained, then payment was due six months after the final appeal was exhausted. Appellants urge they never received permission to mine peat, nor did they receive a monetary judgment, so there was no default. We find this argument disingenuous, because the record is clear although a formal permission to mine peat was not forthcoming; nevertheless, appellants were able to begin mining peat and had been instructed the Ohio EPA would not enforce an action against appellants for any mining they performed after October 15, 1998.
 {¶ 38} Finally, Sub-paragraph E provides that if appellants mine peat from any of their real estate, then they are to repay Farm Bureau in the amount of ten percent of the gross proceeds from the sale of the peat. Appellants admit they did mine peat, and did not tender any portion of the sale proceeds to Farm Bureau. Nevertheless, appellants argue Farm Bureau waived this default, or was barred by the Doctrine of Estoppel.
 {¶ 39} Appellants argue they offered to tender payment in 1998 and 1999, but an officer from the financial department of the Ohio Farm Bureau told them not to worry about the payments at that time. Appellants urge this constitutes waiver of default or the Doctrine of Equitable Estoppel bars this claim.
 {¶ 40} Even if we find the above exchange constituted a waiver of the rights in 1998 and 1999, it appears appellants did not offer to make payments in 2000 and 2001. Further, we find although the Ohio EPA did not issue a permit to appellants to mine peat, it nevertheless gave appellants permission to mine peat in light of the federal decision abrogating the prohibition.
 {¶ 41} We find reasonable minds could not differ on the issue of whether appellants were in default of the provisions providing for repayment.
 {¶ 42} The third assignment is overruled.
 IV {¶ 43} In their fourth assignment of error, appellants urge the trial court erred by granting summary judgment because there are material questions of fact as to the amount appellants owed the Farm Bureau. Appellants urge Farm Bureau claimed $9,230.34 for additional services for Bricker Ecklar over and above the original $25,000 retainer payment. The contract between the parties required written approval.
 {¶ 44} The loan agreement also provided for the Farm Bureau to make 24 monthly mortgage payments to the creditor holding the first mortgage on appellants' real estate. The monthly payments commenced in June of 1996.
 {¶ 45} The accounting the Farm Bureau submitted indicates it made mortgage payments from August of 2000 to August of 2001, for a total of 13 payments. Appellants argue Farm Bureau made payments not called for in the loan agreement.
 {¶ 46} We find appellant is correct in urging Farm Bureau did not demonstrate it was entitled to the payments to the mortgage holder and the law firm, over and above the amount of the contract.
 {¶ 47} Although the parties do not raise this issue, we find a larger problem with the trial court's determination of the amount appellants owed the Farm Bureau. The mortgage deed recorded against appellants' property does not list a principle amount, but references the mortgage note executed on the same day as the mortgage deed. The mortgage note is headed $300,000, and states the borrowers promise to pay the principle amount not to exceed $300,000 or such a lesser amount as may have been loaned, plus interest.
 {¶ 48} The trial court's judgment consolidates all the loans into Farm Bureau's mortgage lien.
 {¶ 49} We find the most the trial court could have entered in judgment against appellants on the foreclosure was $300,000, plus interest at 8% per annum. The balance of the amount, is unsecured by the mortgage, and should not be included in the foreclosure action.
 {¶ 50} Although we find there were no material questions of fact as to the amount owed, we find the trial court erred in ascertaining the amount of the judgment. Accordingly, the fourth assignment of error is sustained.
 V {¶ 51} In their fifth assignment of error, appellants urge the trial court erred in dismissing their counterclaim against Farm Bureau for breach of contract. Appellants urge the sole reason for the agreement between the parties which gave rise to this debt was Farm Bureau's desire to fund appellants' "takings" lawsuit. However, no lawsuit was ever filed, and appellants argue the reason no "takings" lawsuit was ever filed was because of actions taken by the Farm Bureau in abandoning their cause.
 {¶ 52} Even though the EPA and U.S. Corp. of Army Engineers stopped enforcing the prohibition against mining, nevertheless, the record clearly demonstrates appellants was deprived of their livelihood from 1992 until late November, 1997. Appellants urge they had a colorable claim, but were prohibited from pursuing it because Farm Bureau declined to continue to fund the lawsuit, and the cost was prohibitive to appellants.
 {¶ 53} The Farm Bureau responds appellants' argument violates the parole evidence rule and the Statute of Frauds.
 {¶ 54} Because we find certain of the alleged obligations are not secured by the mortgage, we find appellants' arguments may be viable if Farm Bureau attempts to collect on the unsecured loan.
 {¶ 55} Finally, Farm Bureau argues the counterclaim was barred under Civ. R. 13. Civ. R. 13 requires a counterclaim arising out of the transaction or occurrence which is the subject matter of the opposing parties' initial claim and does not require the presence of third parties over whom the court cannot acquire jurisdiction must be pled at the time the pleading is filed.
 {¶ 56} Appellants did not raise this counterclaim in their original answer in the first lawsuit, which the trial court dismissed without prejudice. However, when Farm Bureau re-filed its claim, appellants raised this counterclaim.
 {¶ 57} As Farm Bureau points out an unasserted compulsory counterclaim is barred in any subsequent suit by the Doctrine of Res Judicata, Geauga Truck Implement Company v. Juskiewic
(1984), 9 Ohio St. 3d 12.
 {¶ 58} In White Cross Hospital Association of Ohio v. Weber
(1981), Franklin Appellate No. 80AP965, the Tenth District Court of Appeals reviewed a rather similar case. The court found the underlying purpose of the compulsory counterclaim rule is to enable the courts to settle all related claims in one action, and avoid a wasteful multiplicity of litigation arising from a single transaction or occurrence. The compulsory counterclaim rule has no application where there has been no adjudication on the merits in the principle action. When a party dismisses his claim without prejudice, he may re-file the same claim in the future, and if a counterclaim is then filed there is no possibility of multiplicity of lawsuits, White Cross Hospital at 4, citingWright Miller, Federal Practice and Procedure (1971), Section 1409, Page 36.
 {¶ 59} We find the trial court erred in concluding appellants' counterclaim was untimely.
 {¶ 60} We further find the counterclaim presents genuine issues of material fact, and summary judgment should not have been entered.
 {¶ 61} The fifth assignment of error is sustained.
 {¶ 62} For the foregoing reasons, the judgment of the Court of Common Pleas of Ashland County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
Gwin, P.J., Farmer, J., and Boggins, J., concur
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas of Ashland County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to appellee.