OPINION
{¶ 1} Appellants Farley and Joyce Amos ("appellants") appeal the decision of the Ashland County Court of Common Pleas that granted Appellee Ohio Farm Bureau Federation, Inc.'s ("Farm Bureau") motion for summary judgment on appellants' counterclaim and denied appellants' motion for default judgment and motion to strike. The following facts give rise to this appeal.
 {¶ 2} In 1979, appellants started a peat mining operation on a small bog area on their 123 acre farm. For thirteen years, appellants mined peat on the property pursuant to a permit issued by the Ohio Department of Mines. In the fall of 1992, the U.S. Army Corps of Engineers issued a stop order on appellants' mining operation on the basis that it may violate the Clean Water Act. Appellants applied for a mining permit from the Ohio EPA. The Ohio EPA denied the permit. Appellants' administrative appeal of the denial of the permit was unsuccessful.
 {¶ 3} On November 12, 1993, appellants filed a Chapter 11 bankruptcy petition. From 1993 to 1995, appellants sold peat that was previously harvested or purchased from third parties in order to keep their business going. Appellants' petition in bankruptcy blocked a sheriff's sale of their farm scheduled for November 15, 1993.
 {¶ 4} On March 3, 1995, appellants sent a letter to a Farm Bureau Trustee explaining their situation with the Ohio EPA and U.S. Army Corps of Engineers. Appellants asked for any help the Farm Bureau could provide them. Eventually, appellants received a permit to mine peat in a restricted fashion in 1996. Despite obtaining the mining permit, appellants were not able to resume mining peat on their property because of financial constraints and because their mining equipment had deteriorated during the stop-order. On October 16, 1996, appellants and the Farm Bureau entered into an agreement to assist appellants to re-start their business.
 {¶ 5} The parties executed a loan agreement, mortgage note, and mortgage on March 16, 1996. The loan agreement provided that the Farm Bureau would loan appellants up to $300,000 to pay their creditors from the bankruptcy and to re-start their business. Part of the $300,000 would be used to pay a $25,000 retainer to the law firm Bricker Ecklar to enable appellants to bring a "takings" lawsuit against the government. The loan agreement and the mortgage note both stated the Farm Bureau is interested in establishing a valuable legal precedent in the area of "takings law," and the Farm Bureau believed appellants' situation was an example of a regulatory taking requiring compensation under the Ohio and United States Constitutions.
 {¶ 6} The agreement to advance the $25,000 retainer to Bricker Ecklar provided that any additional legal fees would be paid on a contingent fee contract between Bricker Ecklar and appellants. The agreement provided that an additional retainer may be paid, but only with appellants' prior approval. The parties agreed the approval would not be unreasonably withheld. The parties further agreed appellants would not settle or dismiss the "takings" case without first consulting the Farm Bureau.
 {¶ 7} The contract called for interest at 8% per annum, calculated annually, from the date the money was advanced. The contract listed six "payment dates," when appellants must begin to re-pay the principle and interest. Before appellants filed their "takings" action, the United States District Court for the District of Columbia issued a decision in Am. Mining Congress v.United States Army Corps of Engineers (D.D.C. 1997),951 F.Supp. 267. The district court invalidated the rule under which the EPA and Corps of Engineers prohibited appellants' mining operation. The D.C. Circuit Court of Appeals affirmed the district court's decision. Following this decision, appellants' counsel advised them the decision would likely have an effect on their ability to mine peat and on the continued viability of their "takings" claim. Appellants subsequently submitted a new permit application on November 24, 1997.
 {¶ 8} In December 1997, the Ohio EPA and the Corps of Engineers advised appellants they needed a Section 401 Water Quality Certification before the Corps of Engineers could issue the permit. By June 1998, appellants had still not applied for the permit. Meanwhile, the Ohio EPA advised it was still attempting to assess the impact of the federal case on state programs. On October 15, 1998, the Ohio EPA notified appellants their mining permit was still under consideration, but it would not bring any enforcement action against appellants for their proposed mining operation.
 {¶ 9} On October 26, 1998, the Corps of Engineers informed appellants' counsel that appellants could begin harvesting peat without a permit if they could do so in a one-step process. Appellants mined peat without any permit, and without any interference from the Ohio EPA or the Corps of Engineers for a short time. However, appellants eventually stopped mining peat because they ran out of funds and because it was more difficult to harvest peat from the large bog than it had been from the small bog they originally mined.
 {¶ 10} Appellants did not make any payments on the note. The Farm Bureau filed its complaint for foreclosure on the mortgage. The Farm Bureau alleged that it advanced over $500,000 to appellants. The Farm Bureau filed its original complaint for foreclosure on August 28, 2002. Appellants filed an answer but did not assert any counterclaims. During the pendency of that case, appellants filed a petition for bankruptcy relief in the Northern District of Ohio. The bankruptcy court dismissed appellants' bankruptcy petition on August 15, 2003. On August 21, 2003, the trial court dismissed the Farm Bureau's original complaint, without prejudice, in deference to the bankruptcy proceedings, unaware that the bankruptcy proceedings had been dismissed.
 {¶ 11} On September 16, 2003, the Farm Bureau re-filed its foreclosure action. Appellants' answer included a counterclaim against the Farm Bureau arguing it breached its obligations under the promissory note. The Farm Bureau moved to dismiss the counterclaim and filed for summary judgment on all claims. Appellants moved to dismiss the complaint under the doctrines of maintenance and champerty. On March 26, 2004, the trial court granted the Farm Bureau's motion for summary judgment and denied appellants' motion to dismiss. The trial court entered judgment, for the Farm Bureau, in the amount of $749,073.81 plus interest and foreclosed on the mortgage.
 {¶ 12} Appellants appealed to this Court. We reversed and remanded this matter to the trial court on September 8, 2004. We concluded the trial court erred when it granted judgment on the foreclosure as only $300,000 plus interest at 8% per annum was secured by the mortgage and the balance of the indebtedness was unsecured. We also concluded the trial court erred when it dismissed appellants' counterclaim for breach of contract. SeeOhio Farm Bur. Fedn., Inc. v. Amos, Ashland App. No. 04C-OA-020, 2004-Ohio-4767.
 {¶ 13} On remand, appellants moved for a default judgment on their counterclaim. The Farm Bureau responded by filing an answer to the counterclaim and a motion for summary judgment. Appellants moved to strike the Farm Bureau's answer to their counterclaim as untimely. On June 20, 2005, the trial court denied appellants' motion for default judgment and to strike the answer to the counterclaim. The trial court granted the Farm Bureau's motion for summary judgment. The court determined the Farm Bureau was entitled to judgment in the sum of $300,000 with interest in the sum of $169,846.08 as of April 25, 2005, and a decree of foreclosure of its mortgage. The trial court also granted summary judgment to the Farm Bureau on appellants' counterclaim.
 {¶ 14} Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 15} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING APPELLEE FARM BUREAU'S MOTION FOR SUMMARY JUDGMENT ON APPELLANTS AMOS' (SIC) COUNTERCLAIM.
 {¶ 16} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING APPELLANTS AMOS' (SIC) MOTION FOR DEFAULT JUDGMENT ON THEIR COUNTERCLAIM AGAINST APPELLEE FARM BUREAU.
 {¶ 17} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING APPELLANTS AMOS' (SIC) MOTION TO STRIKE APPELLEE FARM BUREAU'S UNTIMELY ANSWER (REPLY) TO AMOS' (SIC) COUNTERCLAIM."
 I {¶ 18} In their First Assignment of Error, appellants maintain the trial court erred as a matter of law when it granted the Farm Bureau's motion for summary judgment on their counterclaim. We disagree.
 {¶ 19} Prior to addressing the merits of appellants' arguments, we will set forth the applicable standard of review for summary judgment motions. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 20} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 21} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, citing Dresher v. Burt, (1996),75 Ohio St.3d 280.
 {¶ 22} It is based upon this standard that we review appellants' First Assignment of Error. In its judgment entry granting the Farm Bureau's motion for summary judgment, the trial court concluded that appellants did not meet their burden of establishing that a genuine issue of material fact existed with regard to the October 14, 1996 Loan Agreement and any breach thereof as it relates to the "takings" suit or attorney fees and expenses associated with such suit. Judgment Entry, June 20, 2005, at 8.
 {¶ 23} In reaching this decision, the trial court first noted that under paragraph 2(A) of the Loan Agreement[1] the Farm Bureau only had the mandatory obligation to make a loan advance to the law firm Bricker Eckler in the sum of $25,000. Appellant Farley Amos admitted, at his deposition, that the Farm Bureau did advance that sum of money pursuant to the Loan Agreement. See Depo. Farley Amos at 46, 49. The trial court further noted that although not explicitly argued, appellants seem to be contending that if they can prove and recover upon some sort of a side agreement between themselves and the Farm Bureau with regard to attorney fees, they would be entitled to a setoff against the amounts they owe under the Loan Agreement. Judgment Entry, June 20, 2005, at 7.
 {¶ 24} The trial court found appellants' "side agreement" argument failed as a matter of law because paragraph 15 of the Loan Agreement states that it is the entire agreement between the parties and therefore, no setoff against the Loan Agreement is viable. Id. The trial court also found appellants' memorandum in opposition to the Farm Bureau's motion for summary judgment did not establish what the agreement was or exactly what constitutes the breach. Id.
 {¶ 25} In support of this assignment of error, appellants set forth three arguments. First, appellants argue the doctrine of law of the case prevents summary judgment on their counterclaim. In Hopkins v. Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769, the Ohio Supreme Court discussed this doctrine and explained as follows:
 {¶ 26} "The law of the case is a longstanding doctrine in Ohio jurisprudence. `[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan,11 Ohio St.3d at 3, 11 OBR 1, 462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. State ex rel. Potain v. Mathews (1979),59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. It is considered a rule of practice not a binding rule of substantive law. Hubbardex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402, 404,659 N.E.2d 781." Hopkins at ¶ 15.
 {¶ 27} Appellants acknowledge that any additional evidence presented that justifies summary judgment precludes the application of the law of the case doctrine. However, appellants maintain the Farm Bureau did not produce any new evidence to support its motion for summary judgment against their counterclaim. Thus, appellants conclude the trial court erred when it determined they did not meet their burden of establishing that a genuine issue of material fact existed with regard to their counterclaim.
 {¶ 28} In response to appellants' arguments, the Farm Bureau references language in our previous opinion that states, "[b]ecause we find certain of the alleged obligations are not secured by the mortgage, we find appellants' arguments [in support of the counterclaim] may be viable if Farm Bureau attempts to collect on the unsecured loan. Farm Bur. Fedn., Inc.v. Amos, supra, at ¶ 54. Upon remand from this Court, the Farm Bureau represented to both the trial court and appellants that it did not intend to collect the unsecured portion of the appellants' loan in light of this Court's decision.
 {¶ 29} Thus, according to our prior decision in this matter, we agree with the Farm Bureau's argument that appellants would be entitled to pursue their counterclaim only if the Farm Bureau attempted to collect on the unsecured portion of the loan. Any attempts by the Farm Bureau to collect the unsecured portion of the loan would be in violation of paragraph 15 of the Loan Agreement. Similarly, appellants' reliance on a side agreement regarding attorney fees, in order to setoff some of its financial obligation to the Farm Bureau, is also in violation of paragraph 15 of the Loan Agreement.
 {¶ 30} In a related argument, appellants next maintain they have a breach of contract claim irrespective of whether the Farm Bureau attempts to collect on the unsecured debt. As discussed above, we find appellants do not have a cause of action for breach of contract because of the language contained in paragraph 15 of the Loan Agreement. Further, appellants did not meet their burden under Civ.R. 56 because they did not counter the Farm Bureau's proof that it complied with all contractual obligations of the Loan Agreement.
 {¶ 31} Finally, appellants contend the law of the case doctrine precludes the Farm Bureau from raising defenses of parole evidence rule and the statute of frauds. Even if we were to determine the trial court was prohibited from relying upon these legal theories when it granted the Farm Bureau's motion for summary judgment, we find pursuant to our previous decision, that appellants were not entitled to maintain their counterclaim for breach of contract so long as the Farm Bureau did not attempt to collect on the unsecured debt.
 {¶ 32} For the above reasons, we conclude the trial court properly granted the Farm Bureau's motion for summary judgment.
 {¶ 33} Appellants' First Assignment of Error is overruled.
 II {¶ 34} Appellants contend, in their Second Assignment of Error, the trial court erred as a matter of law by overruling their motion for default judgment on their counterclaim against the Farm Bureau. We disagree.
 {¶ 35} In order to address this argument, it is necessary to review the procedural history of this case. Appellants filed their counterclaim on November 17, 2003. The Farm Bureau filed a motion to dismiss the counterclaim pursuant to Civ.R. 12(B)(6), in lieu of an answer. The trial court denied the Farm Bureaus' motion to dismiss the counterclaim because it was moot since the court granted the Farm Bureaus' motion for summary judgment. Appellants appealed. We granted a stay of the proceedings and on September 8, 2004, we affirmed in part and reversed in part the decree of foreclosure issued by the trial court.
 {¶ 36} The case was remanded to the trial court for further proceedings. Appellants sought review of our decision in the Ohio Supreme Court. However, the Court declined to review our decision on February 18, 2005. Upon remand, the trial court was not aware that the previous trial court judge represented to counsel, in a status conference call in October 2004, that the stay issued by this Court would remain in effect. The current trial court judge was unaware of the stay and indicates in her judgment entry of June 20, 2005, that had she been aware of the existence of the stay, she would have terminated it and reactivated the case in conjunction with the March 2, 2005 notice of telephone status conference.
 {¶ 37} Thus, the trial court concluded "[t]he absence of clear direction from the Court, due in part to a change in judges, has led to the issue regarding the timeliness of the Plaintiff's [Farm Bureau's] reply to the counterclaim. Given this procedural history, the Court finds that the Defendant's Motion for Default Judgment and Motion to Strike Answer are not well-taken." Judgment Entry, June 20, 2005, at 2-3.
 {¶ 38} "A trial court is granted discretion in permitting a party to file a pleading outside of the time guidelines set forth in the rules." Hopkins v. Dyer, Tuscarawas App. Nos. 2001AP080087, 2001AP080088, at 5, 2002-Ohio-1576. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Based upon the procedural history set forth by the trial court in support of its decision to deny the motion for default judgment and the fact that the Farm Bureau has been actively involved in this litigation at all times and has actively opposed the counterclaim, we find the trial court did not abuse its discretion when it denied appellants' motion for default judgment.
 {¶ 39} Appellants' Second Assignment of Error is overruled.
 III {¶ 40} In their Third Assignment of Error, appellants maintain the trial court erred as a matter of law by overruling their motion to strike the Farm Bureau's answer to their counterclaim. We disagree.
 {¶ 41} The decision whether to grant or deny a motion to strike is also governed by the abuse of discretion standard of review. See Comunale v. Harrison, Montgomery App. No. 20804,2005-Ohio-4730, at ¶ 6. For the reasons set forth in appellants' Second Assignment of Error, we find the trial court did not abuse its discretion when it denied appellants' motion to strike.
 {¶ 42} Appellants' Third Assignment of Error is overruled.
 {¶ 43} For the foregoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.
Wise, P.J., Farmer, J., concurs.
Gwin, J., concurs in part and dissents in part.
[1] Paragraph 2(A) provides as follows:
"2. OFBF will make loan advances to the Amoses under this Loan Agreement only for the following Authorized Purposes:
"A. OFBF will loan to the Amoses $25,000 to be used as a retainer to the Columbus law firm, Bricker Eckler, LPA. This sum will be used to reimburse Bricker Eckler for any expenses incurred in representing the Amoses in a `takings' claim against the Ohio EPA, and perhaps the U.S. Army Corps of Engineers. Such expenses include copy costs, clerk's filing deposits, court costs, long-distance charges, transportation costs, delivery charges, deposition transcript fees, experts' fees and similar expenses. Any remainder of the $25,000 after the expenses are covered will be applied to legal services rendered on behalf of the Amoses. Any additional legal fees will be paid on a contingent fee contract pursuant to an agreement between Bricker Eckler and the Amoses. An additional retainer may be paid to Bricker Eckler during the litigation to cover additional expenses. The Amoses written approval must be obtained prior to any additional retainer being advanced, such approval shall not be unreasonably withheld. Furthermore, the Amoses understand the significance of the takings claim to OFBF, and they hereby agree that they will not settle or dismiss the `takings' case without first consulting OFBF."