JOHN I. WELLER et al.

*v.*

THE JERSEY CITY, HOBOKEN AND PATERSON STREET RAILWAY COMPANY.

[Filed April 12th, 1904.]

A bill filed by complainants, attorneys of this state, against a defendant, a street railway company, set forth that one John Meffert had been injured by the tort of the defendant and had a right of action against it for damages for his injuries; that he had retained complainants to settle with said company or to prosecute an action for him for said damages; that in consideration of their services to be performed he had assigned to complainants fifty per cent. of whatever might be recovered by suit, settlement or otherwise; that complainants gave notice to said company of such assignment, and thereafter commenced an action in behalf of John Meffert against it; that, pending the action, the company settled with Meffert for a sum of money, the amount of which complainants had not discovered, and paid the agreed-on amount and received from Meffert a complete release of his claim. It thereupon prayed for a discovery, for an accounting of the money so paid, and for a decree for the payment by defendant to complainants of fifty per cent. thereof. On demurrer to the bill for want of equity—*Held*, that the bill stated no grounds on which the relief prayed could be decreed.

On demurrer to bill.

The bill of complaint was filed by John I. Weller and Julius Lichtenstein as partners. It alleges that both complainants are licensed attorneys-at-law, and that John I. Weller is a licensed counsellor-at-law of this state.

The bill states that in November, 1902, John Meffert, while a passenger on one of the cars of the defendant company, was injured by its negligence, whereby a cause of action accrued to him to recover damages for such injuries.

It further states that in said month said Meffert retained complainants, in writing, to settle with said company, or to commence an action for him against said company for said damages; that said Meffert had no money to pay complainants for their services in the action or the costs of the suit, and therefore, by said writing, in consideration of the services to be performed by the complainants, and for other consideration, agreed to pay complainants fifty per centum of whatever might be recovered from said company, by suit, settlement or other-wise, for said injuries, and sold, assigned and transferred unto the complainants fifty per centum of all that might be recovered by suit, settlement or otherwise, for said injuries, and that Meffert thereby also agreed not to settle his said claim with said company nor to discontinue any action which complainants might commence against said company.

The bill further states that on December 17th, 1902, they commenced an action in the supreme court, in the name of said Meffert, against said company, to recover $5,000 damages for said injuries, and afterward filed a declaration in the cause and noticed the same for trial.

The bill further states that on December 12th, 1902, they caused to be served upon the president of the said company a notice, in writing, that complainants had been retained by Meffert to prosecute his action against the company for said injuries, and the notice also informed the company that said Meffert had agreed with complainants not to settle or release his claim against the company, and that the complainants claimed an interest in whatever moneys might then be due, or might thereafter become due or be paid to said Meffert, or be

recovered by him for said injuries, by reason of an assignment made by him to complainants.

The bill further states that on or about March 1st, 1903, said company adjusted and settled the claim and cause of action said Meffert had against it by paying him a sum of money, the amount of which complainants assert they have no means of knowing, and that complainants are informed and believe that said Meffert signed and delivered to said company a release, under seal, releasing said company from all action and damages by reason of the injuries received by him, as set forth in the bill.

The bill thereupon alleges that when said company settled said claim a trust of the proportion of the money so assigned to complainants resulted in their favor, and the said company became the trustee of complainants for fifty per cent. of the money for which said Meffert's claim was adjusted and settled.

The bill further charges that said Meffert is financially irresponsible and possesses no property from which a judgment recovered against him for a breach of his contract with complainants could be collected.

The bill further charges that one Christian Branger and one Harry S. Van Valen had similar claims against said company and retained complainants by a retainer and assignment in writing such as was asserted to have been made between Meffert and complainants, of which retainer and assignment the company received written notice, and that said company, notwithstanding such notice, compromised and settled the respective claims of said Branger and Van Valen and took releases from them therefor. It is asserted that Branger and Van Valen are both of them financially irresponsible, and it is charged that the company thereby became a trustee for complainants and liable to account to them for one-half of the sums respectively paid to Branger and Van Valen.

Upon these statements the prayers of the bill are for an answer without oath and for discovery of the amount paid in the respective settlements of the claims set out in the bill, and that the defendant company shall account to the complainants

for the money respectively paid by it to the three persons above named, in consideration of the settlement of their respective claims, and that said company may be decreed to pay to complainants a sum equal to one-half of the moneys paid upon said compromises and settlements, respectively.

Process is prayed against the said company only.

To this bill defendant demurs, on the ground of want of equity.

*Mr. John I. Weller,* for the complainants.

*Mr. William B. Gourley,* for the defendant.

MAGIE, CHANCELLOR.

The demurrer to this bill is supported upon the sole ground of a want of equity. It is not contended that the bill is defective in failing to bring before the court the different persons who it alleges had valid claims upon the defendant company, which were assigned to the complainants and form the basis of their claim. Nor has there been any contention that the bill is multifarious in that it has sought relief upon three several, distinct and unconnected claims.

The sole contention of the complainants in support of the bill is that by the written retainers and assignments of persons having claims against the defendant company for personal injuries, and by timely notice thereof to the company, complainants became, in equity, assignees of the proportionate parts of any sums which such injured persons should thereafter receive from the defendant company, either by a composition between them or by a recovery and judgment in actions at law, and that a trust thereupon arose, binding the defendant company and making it accountable in equity to the complainants for their proportionate parts thereof.

There is no attempt to support the bill in respect to any part of complainants' claims on the ground of what has been incorrectly styled the attorney's lien, and it is obvious that such a contention would have been unavailable, because it is

Weller *v.* Jersey City, Hoboken and Paterson St. Ry. Co.

well settled that such lien arises only after judgment recovered or after the proceeds of a compromise or settlement have come to the actual possession of the attorney. *Jones on Liens 140, 149; Terney* v. *Wilson, 16 Vr. 282; Phillips* v. *Mackay, 25 Vr. 319; Barnes* v. *Taylor, 3 Stew. Eq. 467; Middlesex Freeholders* v. *State Bank, 11 Stew. Eq. 36.*

The sole question, therefore, is (and it seems to be one of first impression in this state) whether when an attorney, retained by a person injured by the tort of another, has procured from the injured person an assignment of a proportion of the damages which may be recovered by action or judgment, or received by compromise or settlement, and has given notice of such assignment to the tort-feasor, there is raised thereby an obligation on the part of the tort-feasor to account to the attorney, as such assignee, for the proportion of a sum which the tort-feasor has paid to the injured person as compensation for the injury and as satisfaction therefor agreed upon between them, and which obligation can be enforced by the decree of a court of equity.

It is observable that the bill does not disclose any contract on the part of complainants with the persons from whom they procured these assignments, other than such as may be implied from complainants' acceptance of their respective retainers as attorneys. Such acceptance of retainers would bind the attorneys, no doubt, to perform their duties of office in bringing and prosecuting actions at law and in incurring liability for the ordinary costs and expenses thereof. But there is no statement that the attorneys bound themselves to incur expenses not ordinary, such as, *e. g.,* are required in seeking evidence, in procuring the attendance of witnesses at the trial, &c., which, commonly, the client incurs and pays for. It does not appear that the attorneys agreed to incur such expenses and to relieve their clients therefrom, and it may be open to question whether there is disclosed a consideration which will support such assignments or relieve them from being treated as unconscionable. But the question was not raised in the argument and need not be considered.

The insistment of complainants is that such assignments, in the present state of our laws, fall within the jurisdiction of the court of chancery as equitable assignments.

The doctrine of equitable assignment was the growth of the administration of equitable principles in the English court of chancery in its effort to mitigate the rigor of the common law, which originally pronounced all assignments of choses in action to be invalid and incapable of enforcement by action in courts of law. The jurisdiction thus assumed extended not only over assignments of debts and demands arising out of contracts, but also over assignments of possibilities, expectancies or contingencies, and the rationale of the doctrine as to the latter seems to have been, as stated by Mr. Pomeroy, that the assignee of an expectancy, possibility or contingency acquired thereby a present equitable right, which became an equitable property right over the proceeds of such expectancy, possibility or contingency as soon as they came into existence as an interest in possession. *3 Pom. Eq. Jur.* § *1271; Spenc. Eq. Jur. 852; Bisp. Pr. Eq. 214.* It seems to follow that such assignments only become operative and effective when the proceeds of such assigned possibilities, expectancies or contingencies have actually come into existence or possession. The doctrine has been constantly recognized and applied in this court. *Bacon* v. *Bonham, 6 Stew. Eq. 614.*

But there was one class of possibilities of the assignments of which the English court of chancery declined to take jurisdiction, and the class included the possibility of recovering damages for a tort. The reason frequently assigned for such refusal of jurisdiction was that such assignments tended to induce or promote litigation, and so violated the policy of their laws against champerty and maintenance. *3 Pom. Eq. Jur.* § *1276.*

If it be inferred from the statement of the bill that complainants' clients agreed that their attorneys, if successful in their respective suits for damages, should be entitled to a part of the moneys recovered, such an agreement would, under English law, have been champertous. But it was held in our supreme court, in a learned and exhaustive opinion of the late Chief-Justice Beasley, that the law of maintenance and champerty has

never prevailed in this state, and the opinion has been reiterated in that court and approved in the court of errors and appeals. *Schomp* v. *Schenck, 11 Vr. 195; Terney* v. *Wilson, 16 Vr. 282; Bouvier* v. *Baltimore and New York Railway Co., 38 Vr. 291.* The reason of the English court of chancery for refusing jurisdiction of such assignments arising out of the doctrine of champerty and maintenance, is not therefore applicable in this court. The supreme court, in dealing with a judgment in that court upon equitable principles, recognized this view. *Terney* v. *Wilson, ubi supra.*

Mr. Pomeroy declares, as the result of his examination of the cases, that the criterion usually adopted in determining whether a chose in action may be assigned, so that the assignee may invoke the jurisdiction of a court of equity, is this. He says:

"All things in action which survive and pass to the personal representatives of a decedent creditor as assets, or continue as liabilities against the representatives of a decedent debtor, are in general thus assignable; all which do not thus survive, but which die with the person of the creditor or of the debtor, are not assignable."

And he explains that in the second class are included all torts to the person where the injury and damages are confined to the body and the feelings. *3 Pom. Eq. Jur. § 1275.*

I do not find it easy to understand why the capacity of a chose in action to survive to and be enforceable by the claimant's representatives affords a rational test of the justifiable jurisdiction of a court of equity, at least in a case where the assignor is yet alive. But assuming this test to be correct in its classification of choses assignable or non-assignable in equity, it would seem not to be applicable under our legislation. Since the passage of the supplement to the "Act respecting the abatement of suits," which supplement was approved March 17th, 1855 (*P. L. of 1855 p. 40*), the provisions of which supplement were afterward transferred to the "Act concerning executors and the administration of intestates' estates" (Revision), approved March 27th, 1874 (*Gen. Stat. p. 1425*), and now appear as sections 4 and 5 of the last-named act, it has been settled that

a right of action for a personal injury survives to the executors and administrators of the injured person, and, by parity of reasoning, survives against the executors or administrators of the tort-feasor. *Ten Eyck* v. *Runk, 2 Vr. 428; Hayden* v. *Vreeland, 8 Vr. 372; Noice, Admr.,* v. *Brown, 10 Vr. 569; Tichenor* v. *Hayes, 12 Vr. 193.*

If the claims for damages for personal injuries on which complainants' bill is founded had been prosecuted to judgment, it may be open to question whether, in view of the state of our law in respect to maintenance and champerty, and the survivorship of actions, assignments thereof might not become operative upon the judgment and fall within the jurisdiction of this court to enforce in favor of the assignee, as in ordinary cases of equitable assignments. It may be argued that such damages, which at the time of the assignment were unascertained, had by judgment recovered become fixed and determined; that the judgment had become a debt of record and that the amount thereby fixed was a fund which had come into existence out of a previous possibility, and that, in the absence of the obstacles which deterred the English courts from recognizing such assignments, this court might properly enforce upon the judgment, and the judgment debtor, the claim of the assignee.

But such a question is not presented in this case, and the argument suggested is wholly inapplicable to the situation disclosed by this bill. No judgment was recovered upon any of these claims for damages. What occurred between the parties was this: The alleged tort-feasor, the defendant company, admitted its liability for the injuries for which damages were claimed, treated with the injured persons with respect to the amount of compensation to be paid for a release of the claims, and when that amount was agreed on between them paid the same to the injured persons and simultaneously received from them complete releases therefor.

That a person having a valid claim to recover damages for a personal injury may bargain with his attorney and agree to pay him for his services a share of the amount received or recovered, and that such agreement may be enforced between them, seems to

admit of no question. But the contention. on the part of complainants is that the attorney holding such an agreement or assignment of a share of the damages received may, by giving notice thereof. to .the tort-feasor, impose on the latter an obligation to account to him for such share of the compensation for such injuries as may be agreed upon between him and the person he has injured. To give such effect to a notice of such assignment would obviously operate to practically prohibit any composition between a tort-feasor and the person he has wronged, when the composition consists of a cash payment to the latter for a release. It would introduce into the negotiation for settlement, on the basis of a present payment to the injured person, the claim of one who was not injured, and whose only interest in the claim is what Lord Tenterden, in dealing with actions prosecuted *in forma pauperis,* called the *"spes spolii."*

Nor will such assignment fall within the reason of the doctrine respecting equitable assignments of choses in action under the circumstances disclosed in this bill. Such assignments admittedly operate only where some fund or property comes into existence arising out of a previous possibility. He who holds such a fund may then be liable to account to the assignee thereof. Where a composition is made between the tort-feasor and the person wronged, on the basis of a payment for a release, the fund does not come into existence until the payments and the release are simultaneously exchanged. Then the fund thus created is in the hands of the releasor, and the assignee may follow it there; but it never existed in the hands of the releasee.

In many of the states the subject of such contracts of attorneys with their clients has been dealt with by statutes. Some of them confer upon the attorney a lien upon the amount recovered, not only for the costs, but for a stipulated share of the damages under any agreement between the attorney and the injured party. Yet it has been held, in a well-considered opinion in Tennessee, where such legislation exists, that notwithstanding the lien thus imposed by statute, and of which the tort-feasor must have had knowledge, he might well deal with the party making claim upon him for damages for personal injuries, and satisfy

and pay the claim before judgment, without reference to the lien of the attorney. *Tompkins* v. *Nashville, &c., Railroad Co., 61 L. A. R. 340.* The same view was expressed in *Illinois C. R. R. Co.* v. *Wells, 104 Tenn. 711.*

For these reasons I conclude that the bill states no facts upon which an equitable duty on the part of the defendant company arises which can be enforced by decree.

The demurrer must be upheld and the bill dismissed, with costs.