Moyer, C.J.,
dissenting.
{¶ 36} I dissent from the judgment because I find the assignment between Kristy Norregard and West Broad Chiropractic (“West Broad”) to be enforceable. Therefore I would hold that West Broad should be permitted to recover from American Family Insurance for its failure to pay West Broad pursuant to the assignment. Additionally, I would hold that R.C. 3929.06 does not prohibit an assignee of an injured person from filing suit to collect from the insurer on the assignment when the insurer has disregarded the assignment while distributing settlement proceeds.
I

Assignment of the right to contingent future settlement proceeds is permitted as an equitable assignment

{¶ 37} In the first certified-conflict issue, we are asked whether an injured party may assign its right to conditional, future compensation for its injuries when the injured party has not yet established the liability of the tortfeasor or a present right to such compensation. I would answer this question in the affirmative, based upon our prior cases concerning assignments of future interests. Therefore, I dissent from the majority’s holding on the first certified-conflict issue.
{¶ 38} The lead opinion states that in order to validly assign a contingent interest, the assignor must have a “property right that [is] in existence.” *504 According to the lead opinion, Norregard’s assignment of any future compensation for her personal injuries to West Broad for chiropractic care is invalid because Norregard had no present right to settlement proceeds, nor did any proceeds exist. However, in attempting to explain our precedent, the lead opinion actually imposes requirements for an equitable assignment that do not exist in our case law. These new requirements unduly constrict the ability to assign a future interest.
{¶ 39} A contingent, future property interest is an uncertain right at best. This is so because the existence of the property in question is speculative, its existence depending not only on the occurrence of some specified future condition but also on the caprice of fate. Additionally, contingent interests, by definition, do not vest a present property right in the holder of the interest, although they may give rise to rights enforceable in equity. Therefore, in general, such assignments were not enforced as contracts at law because an expectancy was deemed too intangible. Hite v. Hite (1929), 120 Ohio St. 253, 262-264, 166 N.E. 193; and Moore v. Foresman (1962), 172 Ohio St. 559, 566, 18 O.O.2d 123, 179 N.E.2d 349; Pennsylvania Co. v. Thatcher (1908), 78 Ohio St. 175, 188, 85 N.E. 55. However, a right to enforce assignments of future interests was recognized in equity. Id. at 188-189, 85 N.E. 55. In order for an assignment to be enforced in equity, we require that the assignor have an “expectancy” in the object of the assignment. Hite, 120 Ohio St. at 260-261, 166 N.E. 193. At common law, assignments were held to a stricter requirement: that the assignor have a “right in being” in the object of the assignment. Needles v. Needles (1857), 7 Ohio St. 432, 442-443. A right in being is a cognizable expectation, founded on some provision of law or instrument or some legal act, that in the future, the assignor will possess the object of the assignment. Id.
{¶ 40} When such an expectancy or right in being exists, certain privileges belong to the holder of the contingent interest, such as the ability to assign the contingent interest. Id.; Hite, 120 Ohio St. at 260-261, 166 N.E. 193. These assignments will be enforced in equity once the contingency has occurred and property rights to the subject matter of the assignment vest in the assignor. Hite at 262-264, 166 N.E. 193; Moore, 172 Ohio St. at 566, 18 O.O.2d 123, 179 N.E.2d 349; Thatcher, 78 Ohio St. at 188-189, 85 N.E. 55. (Here, Norregard is the “assignor,” West Broad is the “assignee,” and American Family is the “debtor.”)
{¶ 41} In this case, Norregard’s expectation of compensation for her injury rested on the cognizable provision at law of the right to seek redress for injuries already sustained. Norregard had an expectancy and a right in being in the nature of a legally recognized remedy for her injuries. Her future interest was *505 contingent on her success in pursuing that right. Thus, her expectation is founded in relief recognized in law and may be assigned.
{¶ 42} The premise of the lead opinion' — that property or a property interest must exist — is contradicted by our precedent concerning equitable assignments. In Gen. Excavator Co. v. Judkins (1934), 128 Ohio St. 160, 166, 190 N.E. 389, which is ignored by the lead opinion, we enforced an equitable assignment for the future proceeds of a contract, although the work had not yet been performed and no proceeds were due. We held that an equitable assignment is created by “an intention on one side to assign and an intention on the other to accept, supported by sufficient consideration, and disclosing a present purpose to make an appropriation of a debt or fund.” Id. at 165, 190 N.E. 389.
{¶ 43} As is apparent from the facts in Gen. Excavator, the assignor did not have a present right to the property at issue, nor was the property in existence at the time the assignment was made. Gen. Excavator Co., 128 Ohio St. at 165-166, 190 N.E. 389. No work had been performed on the contract, so the assignor had received no payment and had no right to payment. Id. Thus, as to the first element of the assignment — the “debt or fund” — the assignor had merely an expectation interest. Yet the court in Gen. Excavator held that the assignment was valid. Id. at 167, 190 N.E. 389. It was apparently sufficient for the court that the property would exist upon the exercise of an expectancy or right in being, namely the assignor’s privilege to perform the work specified in a contract. That is, the assignor had an assignable interest in the future proceeds of the contract, although those proceeds would not exist until the assignor performed work under the contract and received payment for that work. Thus, as long as the assignor has the present purpose to make an appropriation from a fund— even a fund that does not exist and to which the assignor has no present right— then the first element of Gen. Excavator is met.
{¶ 44} In this case, no one questions the existence of the other elements of a valid equitable assignment under Gen. Excavator: the intent of the parties to create an assignment or the underlying consideration. Gen. Excavator Co., 128 Ohio St. at 165, 190 N.E. 389. Rather, the appellee and the majority deny the right of Norregard to the funds at issue. However, Gen. Excavator indicates that the assignor need not have a present right to funds, nor do the funds need to be in existence. Gen. Excavator is analogous to this case. There is no meaningful difference between assigning the right to the uncertain proceeds of a future contract and assigning the right to proceeds of a future lawsuit or settlement. In either case, the property depends for its existence on the assignor’s successful pursuit of “rights in being.” Accordingly, as in Gen. Excavator, we have here a valid equitable assignment without a present property *506 interest or property in existence. Therefore, I would hold that the elements of an equitable assignment under Gen. Excavator have been met in this case.
{¶ 45} The cases cited in the lead opinion, Hite, 120 Ohio St. at 253, 166 N.E. 193, and Moore, 172 Ohio St. at 559, 18 O.O.2d 123, 179 N.E.2d 349, do not alter this result. Neither Hite nor Moore supports the premise of the lead opinion that the only expectations that may be assigned are those in which the future interest is based upon “a property right that was [already] in existence.” In fact, both Hite and Moore recognized that a future interest based on rights and property not in actual existence could be assigned in equity. Hite at 260-261, 166 N. E. 193; Moore, paragraph one of the syllabus.
{¶ 46} In Hite, the assignor assigned his expected inheritance from his mother’s estate to his sister, the assignee. Hite, 120 Ohio St. at 256, 166 N.E. 193. The Hite court held that the assignment was not enforceable at law, but was enforceable in equity, because it would have been inequitable to allow the assignor to retain both the inheritance and the consideration given by the assignee in the event that the assignor actually inherited the res, i.e., the subject matter, of the assignment. Id. at 260-261, 166 N.E. 193. The Hite court enforced the assignment, even though at the time of the assignment, the assignor had no present rights to the property, the property did not exist when the assignment was made, and the assignor’s expectancy had only “potential existence,” contingent on the occurrence of a future event. Id. Thus, Hite is no support for the conclusion that an expectation interest can be assigned only when it is a “property interest [already] in existence.”
{¶ 47} In Moore, we came to the unsurprising conclusion that because Ohio law recognized a protectable right to equitable or beneficial ownership of property held in trust (although the beneficiary had no present legal ownership), the beneficiary could assign that interest in equity. Moore, 172 Ohio St. at 566, 18 O. O.2d 123, 179 N.E.2d 349. The holding in Moore was premised on the already established rule that a contingent future interest was alienable and the widely recognized rule that “[e]quitable or beneficial ownership and interest in securities is alienable and may be conveyed.” Id. at paragraph two of the syllabus. Simply put, Moore did nothing more than recognize that an equitable ownership in securities is alienable and therefore can be assigned in equity. Moore does not affect the issue before us beyond providing another example of the assignability of a contingent future interest.
{¶ 48} The lead opinion reads Hite and Moore to require a present interest in property or the existence of the property before a contingent interest may be assigned. Yet, as Hite and Moore illustrate, contingent interest will rarely — if ever — involve presently existing property rights or property in actual existence. The Hite court expressly recognized that the assignor’s right to property was *507 based upon a “mere expectancy” of that right, that the assignor had no existing right, and that no property existed at the time of the assignment. Hite, 120 Ohio St. at 260-261, 166 N.E. 193. It is hard to imagine which, if any, contingent interests will remain assignable following the majority’s holding.
{¶ 49} Furthermore, it is apparent from the number of cases addressing this type of assignment that such an assignment is a common means for injured persons to receive medical treatment while waiting for monetary relief.[1] Injured persons have an expectation of relief that equity recognizes without first requiring instigation of courtroom proceedings.
{¶ 50} Therefore, I would hold that the law permits West Broad to enforce its equitable assignment. Courts have historically enforced such assignments once the contingency has occurred and the object of the assignment has come into existence. Hite, 120 Ohio St. at 262-264, 166 N.E. 193; Moore, 172 Ohio St. at 566, 18 O.O.2d 123, 179 N.E.2d 349; Thatcher, 78 Ohio St. at 188, 85 N.E. 55. The question remains whether West Broad may enforce the assignment against American Family Insurance, a third party to the assignment.

After notice, the assignee may sue a third-party debtor who did not pay pursuant to the assignment

{¶ 51} The majority holds that equitable assignments cannot be enforced against third parties who did not consent to the agreements. But this holding is directly contrary to precedent established in Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Volkert (1898), 58 Ohio St. 362, 367, 50 N.E. 924, and Gen. Excavator, 128 Ohio St. 160, 190 N.E. 389. Furthermore, the lead opinion’s reliance on the reasoning in Thatcher, 78 Ohio St. 175, 85 N.E. 55, is misplaced, because Thatcher addressed only money damages in an action at law, and the reasoning cited from Thatcher is dicta. Id. at syllabus.
{¶ 52} In Volkert, an attorney had assigned his fee from an unpaid judgment to the assignee, but the judgment debtor disregarded the assignment and paid the *508 attorney’s client instead. Volkert, 58 Ohio St. at 368, 50 N.E. 924. We held that the attorney’s assignment was enforceable in equity. Id. at 369-371, 50 N.E. 924. We also held that equity permitted the assignee to enforce the assignment against the third-party debtor, even though it had not consented to pay pursuant to the assignment. Id. at 372, 50 N.E. 924. Indeed, we required the debtor, which knew of the assignment, to pay the assignee, despite having already paid the full debt amount to the client; “the [debtor], while it had a full right to compromise, was simply required to deal with all parties in interest, including those holding a valid property interest in the judgment, and entitled to a portion of the proceeds.” Id. at 377, 50 N.E. 924.
{¶ 53} We applied the rule in Volkert in Gen. Excavator in an opinion issued well after Thatcher, 78 Ohio St. 175, 85 N.E. 55. Gen. Excavator, 128 Ohio St. at 165, 190 N.E. 389. In Gen. Excavator, we held, “The consent of a debtor, i.e., the one obligated to an assignor, is not required to an assignment, even though it be for only a part of an entire debt or claim. Such assignment will be enforced against the debtor in equity.” Id., citing Volkert, 58 Ohio St. at 362, 50 N.E. 924. The majority’s holding today improperly displaces the rule of law announced in these cases.
{¶ 54} Moreover, Thatcher is not controlling or even applicable. The holding of Thatcher —that equitable assignments must be enforced in equity and cannot be enforced in actions at law — has no bearing on this case, particularly because of the now defunct distinction between actions at law and at equity. See Thatcher, 78 Ohio St. at 187, 85 N.E. 55; Civ.R. 2 (“There shall be only one form of action, and it shall be known as a civil action”).
{¶ 55} The Thatcher court noted in dicta that under the facts of that case, the suit was “questionable” in equity as well, because of the circumstances of the particular assignment in that case, in which it appeared that a portion of the underlying claim — not the proceeds of settlement — had been assigned (i.e., the assignor had assigned a “chose in action,” giving the right to pursue a portion of her cause of action to a third party). Id. at 192, 85 N.E. 55, citing Weller v. Jersey City, Hoboken & Paterson Street Ry. Co. (1904), 66 N.J.Eq. 11, 18-19, 57 A. 730. The Thatcher court suggested that under such circumstances, the assignee would have no right in equity to enforce his assigned “portion” of the underlying cause of action against the debtor alone because (1) doing so would interject the interests of an uninjured third party into settlement negotiations, undermining the needs of the injured party; and (2) the fund of the resulting assignment would not come into existence until the tortfeasor had been released from liability. Id. at 190-192, 85 N.E. 55.
{¶ 56} This viewpoint likely stems from the then existing rule that although choses in action were generally assignable, choses in action for personal injury *509 were generally not. Cincinnati v. Hafer (1892), 49 Ohio St. 60, 66, 30 N.E. 197. And the dicta of Thatcher reflect the general policy against champerty and maintenance (i.e., the interference with the maintenance of a lawsuit by a third party who has agreed to assist in the litigation in exchange for a portion of the proceeds) by prohibiting assignments that may undermine the needs of the injured party, needlessly complicate litigation, and frustrate settlement by introducing a self-interested third party to the litigation and settlement process. See, e.g., Rancman v. Interim Settlement Funding Corp., 99 Ohio St.3d 121, 2003-Ohio-2721, 789 N.E.2d 217, at ¶ 10.
{¶ 57} Thus, Thatcher addresses, in dicta, the undesirability of permitting equitable assignment of choses in action (or portions of the underlying cause of action) for personal-injury torts. Yet Norregard did not assign her injury or right of action against the tortfeasor; she assigned her right to settlement proceeds. There is an important difference between assigning a cause of action and assigning the proceeds from future pursuit of that cause of action. The former would insert a self-interested third party into the litigation and raise concerns of champerty. The latter imparts no cognizable right in the litigation of the cause of action to the third party and gives the third party an enforceable right only to the extent that there are proceeds from resolution of the cause of action. This distinction has been recognized as significant by the courts of last resort of at least three other states, as appellant points out. Charlotte-Mecklenburg Hosp. Auth., 340 N.C. at 91, 455 S.E.2d 655; Achrem v. Expressway Plaza Ltd. Partnership (1996), 112 Nev. 737, 740-741, 917 P.2d 447; Hernandez, 319 Md. at 235, 572 A.2d 144. Each of those courts has permitted assignments similar to those in this case.
{¶ 58} Accordingly, the assignment in this case — of the proceeds of a future settlement — does not raise the concerns noted in Thatcher and Rancman: the assignee will not have a right to be involved in the litigation of the injury claim or the resulting settlement discussion, and the assignment will not compromise the ability of the tortfeasor to settle with the injured party.
{¶ 59} Therefore, I would hold that the rule in Volkert is the proper rule to apply and that West Broad may recover from American Family Insurance, which had notice of the assignment but did not pay according to its terms.
II

R.C. 3929.06 does not bar a lawsuit by an assignee against a third-party insurer who paid settlement proceeds in disregard of an assignment of which it had notice

{¶ 60} With regard to the second certified issue, the lead opinion reasons that R.C. 3929.06 precludes an assignee from suing an insurer who paid settlement *510 proceeds in disregard of an assignment of which it had notice. I disagree. Courts are charged to apply statutes as plainly written. MedCorp, Inc. v. Ohio Dept. of Job & Family Servs., 121 Ohio St.3d 622, 2009-Ohio-2058, 906 N.E.2d 1125, ¶ 9 (“When construing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous”). And R.C. 3929.06(B) is plainly inapplicable to the situation at hand.
{¶ 61} R.C. 3929.06 provides:
{¶ 62} “(A)(1) If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiffs successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor’s policy of liability insurance applied to the satisfaction of the final judgment.
(¶ 63} “(2) If, within thirty days after the entry of the final judgment referred to in division (A)(1) of this section, the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount. Subject to division (C) of this section, the civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor.
{¶ 64} “(B) Division (A)(2) of this section does not authorize the commencement of a civil action against an insurer until a court enters the final judgment described in division (A)(1) of this section in the distinct civil action for damages between the plaintiff and an insured tortfeasor and until the expiration of the thirty-day period referred to in division (A)(2) of this section.”
{¶ 65} R.C. 3929.06(B) is the portion of the statute at issue. That portion of the statute requires an injured party to wait 30 days after judgment against a tortfeasor before filing suit against the tortfeasor’s insurer to collect on that judgment. The majority does not dispute this reading of R.C. 3929.06. Thus, the statute confines itself to one type of lawsuit — a suit by an injured person to collect from an insurer after a judicial determination of the liability of a tortfeasor — and the prohibition in the statute pertains only to the filing of a lawsuit to collect on such a judgment after 30 days have passed from the final judgment of damages.
*511 {¶ 66} I cannot follow the rationale that stretches the words of R.C. 3929.06 to preclude a suit by an assignee to collect on an assignment when the insurer distributed settlement money in disregard of the assignment. R.C. 3929.06(B) simply does not apply to such a cause of action.
{¶ 67} Moreover, the statute has no application to the facts of this case. The statute applies to suits to collect on a judgment and has no application unless a civil judgment has been entered as described in R.C. 3929.06(A)(1). In this case, there was no judgment or need to collect on a judgment — the insurer settled with the injured party out of court. When the assignee files suit because the insurer paid in disregard of the assignment, the statute, by its own terms, has no application to such a suit.
{¶ 68} At best, the majority’s holding with regard to R.C. 3929.06 is a non sequitur. The lead opinion states that the “underlying premise” of R.C. 3929.06 confirms the conclusion that the assignment was invalid, because Norregard had no existing property or property rights to assign. The majority then answers the second certified question “yes,” concluding that R.C. 3929.06 precludes an assignee from bringing a direct action against a third-party insurer after the insurer has distributed settlement proceeds in disregard of the written agreement. This conclusion is odd because if the majority’s reasoning is correct and the assignment was invalid, then West Broad never had a cause of action, and there is nothing for R.C. 3929.06 to preclude. If the majority’s view were carried to its logical conclusion, then we should not reach the second certified question — the statute does not preclude the action; rather, the lack of a valid assignment precludes the action against the insurer, and the second certified question is moot. As argued above, I do not agree that the assignment was invalid; therefore, I cannot agree with the majority’s holding with regard to R.C. 3929.06.
{¶ 69} Furthermore, the majority ignores the settled law on suits to collect on an improperly paid assignment. An assignee of an equitable assignment may sue a third-party debtor who had notice of the assignment but did not pay accordingly. Volkert, 58 Ohio St. 362, 50 N.E. 924, paragraphs one, two, and three of the syllabus; Gen. Excavator, 128 Ohio St. at 165, 190 N.E. 389. We have held that the third-party debtor is liable in such circumstances, even when that debtor did not consent to pay pursuant to the assignment. Volkert, 58 Ohio St. 362, 50 N.E. 924, paragraph three of the syllabus.
{¶ 70} Therefore, I would hold that R.C. 3929.06(B) does not prohibit an assignee from suing an insurer who distributed settlement proceeds in disregard of an assignment of which it had notice.
Ill
{¶ 71} Norregard had a right in being to seek a remedy for her injuries. Therefore, I would hold that her future interest in the proceeds of a lawsuit or *512 settlement was assignable. West Broad, the assignee, is entitled to enforce the assignment against American Family Insurance, the third-party debtor, under settled law. R.C. 3929.06 does not apply to prohibit West Broad from suing American Family for failure to properly distribute the proceeds under the terms of the assignment.
Katz, Teller, Brant & Hild and James F. McCarthy III, for appellant.
Frost, Maddox & Norman Co., L.P.A., and Mark S. Maddox, for appellee. Boehm, Kurtz & Lowry and John P. Lowry; and Montgomery, Rennie & Jonson and George D. Jonson, urging reversal for amici curiae Ohio State Chiropractic Association and Ohio Osteopathic Association.
Roetzel & Andress, Laura M. Faust, and Jerome G. Wyss, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.
{¶ 72} Therefore, I dissent.
Pfeifer and Cupp, JJ., concur in the foregoing opinion.

. The parties have cited six Ohio court of appeals cases, two cases from the courts of last resort of other states, and several state and federal trial court cases, including the following: Akron Square Chiropractic v. Creps, Summit App. No. 21710, 2004-Ohio-1988, 2004 WL 840131; Cartwright Chiropractic v. Allstate Ins. Co., Butler App. No. CA2007-06-143, 2008-Ohio-2623, 2008 WL 2231651; Fletcher v. Nationwide Mut. Ins. Co., Darke App. No. 02CA1599, 2003-Ohio-3038, 2003 WL 21360646; Knop Chiropractic, Inc. v. State Farm Ins. Co., Stark App. No. 2003CA0018, 2003-Ohio-5021, 2003 WL 22176668; Mt. Lookout Chiropractic Ctr., Inc. v. Motley (Dec. 1, 1999), Hamilton App. No. C-980987, 1999 WL 1488971; Roselawn Chiropractic Ctr., Inc. v. Allstate Ins. Co., 160 Ohio App.3d 297, 2005-Ohio-1327, 827 N.E.2d 331; Charlotte-Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co. (1995), 340 N.C. 88, 455 S.E.2d 655; Hernandez v. Suburban Hosp. Assn., Inc. (1990), 319 Md. 226, 572 A.2d 144; Midtown Chiropractic v. Illinois Farmers Ins. Co. (Ind.2006), 847 N.E.2d 942; Bernstein v. Allstate Ins. Co. (1968), 56 Misc.2d 341, 288 N.Y.S.2d 646; and In re Petry (Bankr.N.D.Ohio 1986), 66 B.R. 61.