Marshall, C. J.
 

 Sarah L. Hite, a widow, was the mother of Oscar S. Hite and Maud Mussetter, and she was living on April 27, 1914, at the time the agreement was made. Since no one can be heir to a living person, Oscar’s status was that of heir apparent or presumptive, with the hope of succeeding to a portion of his mother’s estate, either by will or descent. He had no present existing right, either vested or contingent, and that which he attempted to convey was at most a bare or mere possibility, sometimes referred to as an expectancy.
 

 
 *257
 
 Fortunately for both parties to the agreement, the mother did make him a beneficiary in her will. We are not troubled in this case with questions of fact. The Court of Appeals having heard the case
 
 de novo
 
 on appeal, has found that the written assignment was executed and delivered, and that it was supported by a full and adequate consideration, with the intention in good faith to assign all of the interest of Oscar in his mother’s estate. The suit was brought by the executors of Sarah L. Hite praying the direction of the court in the distribution of the estate, and Oscar S. Hite and the estate of Maud Mussetter were made parties defendant. While neither of said defendants was praying relief against the other, the estate of Maud Mussetter is in the position of resisting the payment of the distributive share to Oscar S. Hite. By the pleadings the court was called upon to make inquiries into the contract to determine its bona tides, fairness, adequacy of consideration, freedom from duress or imposition, and whether in equity and good conscience Oscar S. Hite could retain the consideration paid to him thirteen years earlier, without obligation to account for the money had and received by him and the interest thereon during the period the same was so retained. He insists that the agreement is utterly void and of no effect, and that it does not even create an estoppel against him.
 

 It is conceded by counsel, and this court unanimously concurs in holding, that it is contrary to the policy of our laws to give legal recognition to an attempted assignment by an heir apparent of the possibility of a succession to the estate of an ancestor. Out of the multitude of decisions upon this
 
 *258
 
 subject rendered by the courts of last resort in this country, this rule may be regarded as established by the decided weight of authority. The rule has not, however, been declared in any former decision of this court in which that question has been directly involved.
 

 It is insisted by counsel for Oscar S. Hite that the ease of
 
 Needles, Exr.,
 
 v.
 
 Needles,
 
 7 Ohio St., 432, 70 Am. Dec., 85, has decided this principle favorably to his contentions. In that case the ancestor Philemon Needles paid certain sums of money as advancements to certain of his children, taking receipts for the same, in which it was stated by the children, respectively:
 

 “Which I acknowledge to be in full of all claims I could have against the estate of said Philemon Needles after his death, as one of his heirs, hereby binding myself and my heirs not to set up any further claim.”
 

 The court held that that receipt was not good as an advancement, because Philemon Needles thereafter made a will. The court further held that it was not good as an agreement, because it lacked both mutuality and consideration. The reasoning of the court, at page 444 of the opinion, was that such an agreement, if recognized, would permit an ancestor to make division and distribution of his property after his decease by agreement, rather than by the formalities of a will, as provided by law. The discussion of the court related to those matters and the rights of a husband by his contract to bind a
 
 feme covert
 
 during coverture, but the court did of necessity discuss the question whether a mere possibility of succession can be
 
 released,
 
 and reached
 
 *259
 
 the conclusion that such an expectancy, or chance of succession, is not the subject-matter of release or assignment at common law. Though the question was not either nearly or remotely involved, the court discussed the assignability in equity of an expectancy, at page '446 of the opinion:
 

 “Reference has been made to a class of cases, where one of the heirs presumptive has purchased and paid a valuable consideration for the expectancy of another of the heirs in the ancestor’s estate ; and where two of the children have contracted with each other, to divide equally whatever may come to them from an ancestor by devise or descent, in which such contracts have been sustained. Such is the effect of several of the cases, English and American, referred to by counsel in this case.
 
 Trull
 
 v.
 
 Eastman and Wife,
 
 3 Met. [Mass.], 121 [37 Am. Dec., 126];
 
 Fitch
 
 v.
 
 Fitch,
 
 8 Pick. [Mass.], 480;
 
 Beckley
 
 v.
 
 Newland,
 
 2 P. Wms., 182. These cases, however, turn upon a wholly different principle from that of the case before us, and bear no analogy whatever to it. Where two of the children contract with each other in regard to their expectancy from their ancestor, they stand upon equal footing, and although such contract cannot operate by way of assignment or release, yet where a valuable consideration has been paid, it may operate by way of estoppel, or be enforced in equity.”
 

 This declaration was not based upon any fact in the case, and was therefore
 
 obiter.
 
 It is, however, useful as indicating what the court did not decide, and it is further useful because it indicates that the particular controversy involved in the instant case was not decided in that case.
 

 
 *260
 
 The claim that the agreement in this ease was not entirely void is supported by the reasoning of the court in
 
 Firestone
 
 v.
 
 Firestone,
 
 2 Ohio St., 415. In that case the ancestor, Nicholas Firestone, executed a deed of certain property to his son Henry. Henry made out and acknowledged in due form a release and acquittance to his father of all claim that he might have on his estate. These deeds were reciprocally delivered and placed on record. At page 418 of the opinion, in discussing the claim that the release was not binding upon the son, it is stated:
 

 “But, if this contract of release could not have been specifically enforced, still the money consideration was paid by the defendant, and everything contracted for by him had been performed to the satisfaction of the father, who made the conveyance, and if the defendant could have claimed a distributive share of his father’s estate, and had done so, this property, in that case, would have been held to be an advancement of so much, for which, although he would have had to account, yet it would not have affected his title.”
 

 Plaintiff in error has cited
 
 Hart
 
 v.
 
 Gregg,
 
 32 Ohio St., 502. We do not think the principles declared in that case throw any light upon the instant case, and it is apparent from the third paragraph of the syllabus that it was grounded upon the fact that there were no acts of the grantor amounting to an equitable estoppel, and that he was not therefore estopped from asserting an after-acquired title. Facts creating an estoppel are clearly existent in the instant case.
 

 Turning to the decisions of other jurisdictions, we find a very large number of authorities dealing with
 
 *261
 
 the subject of assignability of a mere expectancy, and authority can be found supporting almost every conceivable angle of the subject. The courts of Kentucky stand alone in holding such contracts to be void and not enforceable either in law or equity.
 
 McCall’s Admx.
 
 v.
 
 Hampton,
 
 98 Ky., 166, 32 S. W., 406, 33 L. R. A., 266, 56 Am. St. Rep., 335;
 
 Wheeler’s Exrs.
 
 v.
 
 Wheeler,
 
 2 Metc. (Ky.), 474, 74 Am. Dec., 421;
 
 Alves
 
 v.
 
 Schlesinger,
 
 81 Ky., 290. "We are of the opinion that upon no sound principle can such a contract be declared to be wholly void and of no effect. A simple illustration will suffice to show that such a contract at most is only unenforceable in an action at law. Let us suppose that an ancestor is the owner of certain real estate and has two sons, A and B. During his lifetime one of the sons, A, conveys to the other, B, by deed of bargain and sale, without warranty, his expectancy in a half interest in the real estate, describing it accurately, and the deed of conveyance recites that it is in consideration of the conveyance to him by B of other real estate conveyed by deed of bargain and sale without warranty, which real estate is owned absolutely and in fee simple by B. B concurrently executes to A a deed of bargain and sale without warranty, conveying to A the fee-simple title to the real estate actually owned by him, and in that deed recites as consideration the conveyance of A’s expectancy in the real estate of their father. By such transactions A acquires the legal title to B’s real estate and cannot be divested of that title except by reconveyance or by the decree of a court of equity. If the deed of A is wholly void, necessarily the deed of B must likewise be void. If the deed of B is only voidable, the
 
 *262
 
 deed of A must likewise be only voidable. If the father dies intestate, and B brings an action to compel the execution of a deed by A after the father’s death, and A should resist the action, he would be in exactly the same situation as Oscar S. Hite in the instant case; the only difference being that Maud Mussetter paid money instead of executing a deed to real estate. In a court of equity, A would not be permitted to hold the title to B’s real estate and withhold a conveyance of his interest in the estate of the father. A court of equity which would hold that B’s conveyance to A could not be disturbed, while at the same time permitting A to withhold á valid conveyance, would be in the peculiar situation of holding B’s deed valid, while holding the consideration named in it to be void.
 

 In
 
 Searcy
 
 v.
 
 Gwaltney Bros.,
 
 36 Tex. Civ. App., 158, 81 S. W., 576, it was held that a contract assigning an expectancy is enforceable in an action at law. The courts of sixteen other jurisdictions have enforced such contracts in equity on a variety of grounds. In some of these cases there is no suggestion that such contracts are against the policy of the law. By other authorities such contracts are held to be contrary to the policy of the law, because grounded in maintenance and multiplicity of suits and contentions, and, further, because they assume that one party is defenseless and exposed to the demands of the other under the pressure of necessity. By the decided weight of all the authorities, such a contract is held to be not enforceable at law, because it lacks one of the essential elements of a valid contract, viz., valid subject-matter, and that it therefore transfers no right
 
 in prcesenti.
 
 A sale of an expect
 
 *263
 
 ancy does not relate to property or rights
 
 in esse,
 
 though it does have a potential existence, because the property concerning which the contract is made does exist, and in the ordinary course of events the grantor hopes and expects to acquire complete title. The difficulty is that he has no present -interest, and the contract has therefore no present validity or enforceability. If and when the hopes and expectations of the presumptive heir are realized, and his inheritance becomes absolute and definable, it would be inequitable to permit him to hold the interest in the estate and at the same time re tain the consideration received from the other party to the contract.
 

 A court of equity should therefore enforce it as a contract to sell and convey, but, before decreeing such performance, should inquire into the circumstances from which the contract evolved, not merely to determine whether grantor had made a wise bargain, and whether it could afterwards be shown to have been improvident, but to ascertain whether fraud or imposition was practiced, whether made under the pressure of necessity, and whether supported by an adequate consideration. In addition to such inquiries, a court of equity should apply the same tests as are applied to any ordinary suit where specific performance of a contract is sought. The-court of common pleas and the Court of Appeals subjected this transaction to a searching inquiry, and found that it was free from fraud and imposition, that it was supported by a full and adequate consideration, and was executed in good faith and with intention to assign all of the interest of Oscar S. Hite in the estate of his mother. The judg
 
 *264
 
 ment of the Court of Appeals which decreed that the administrator of the estate of Maud Mussetter is entitled to receive the distributive interest of the said Oscar S. Hite in said estate must be affirmed.
 

 Judgment affirmed.
 

 Kinkade, Jones, Day and Allen, JJ., concur;