RANCMAN, APPELLEE, *v.* INTERIM SETTLEMENT FUNDING CORPORATION ET AL., APPELLANTS.

[Cite as *Rancman v. Interim Settlement Funding Corp.*, 99 Ohio St.3d 121, 2003-Ohio-2721.]

(No. 2001–2154—Submitted January 21, 2003—Decided June 11, 2003.)

O'CONNOR, J.

{¶ 1} We are asked to address whether a nonrecourse advance of funds secured solely by an interest in a pending lawsuit and at a contracted return exceeding 180 percent per year is permissible under Ohio law. We hold that it is not. Such an agreement constitutes champerty and maintenance and thus is void under Ohio law.

I

{¶ 2}   Roberta Rancman, appellee, was seriously injured as a passenger in a one-vehicle collision in the early hours of March 1, 1998.   Rancman filed suit in March 1999 against State Farm Insurance Company, claiming uninsured motorist benefits under a motor vehicle policy issued to her estranged husband.

{¶ 3}   Rancman was unwilling to wait until the resolution of her case against State Farm to receive the insurance proceeds.   In April 1999, Rancman contacted appellant Interim Settlement Funding Corp. ("Interim"), seeking an advance of funds secured by her pending claim.   In April 1999, after investigating Rancman's case, Interim's president, on behalf of a second company, appellant Future Settlement Funding Corporation ("FSF"), forwarded $6,000 to Rancman in exchange for the first $16,800 she would recover if the case was resolved within 12 months, $22,200 if resolved within 18 months, or $27,600 if resolved within 24 months.   If the case was not resolved in Rancman's favor, she had no obligation under the contract.

{¶ 4}   In September 1999, Interim advanced an additional $1,000 to Rancman, which was secured by the next $2,800 she expected to collect on her claim.   The Interim agreement was also without recourse if Rancman did not recover in the State Farm action.

{¶ 5}   Rancman settled her case against State Farm for $100,000 within 12 months of entering the agreement with FSF. Rancman refused payment on the contracts;  instead, she tendered the return of the moneys advanced to her at eight percent interest per annum.   In December 1999, Rancman filed suit against Interim and FSF, seeking rescission of the contracts and a declaratory judgment that the defendants' practices were "unfair, deceptive, and unconscionable sales practices * * *."

{¶ 6}   The case proceeded to a two-day trial before a magistrate.   The magistrate concluded that the transactions were loans that violated Ohio's usury law and provisions of R.C. Chapter 1321, the Small Loan Act. The common pleas court adopted the magistrate's findings and ordered the repayment of the principal at eight percent interest per annum.   The Court of Appeals for Summit County agreed that the transactions were loans subject to R.C. Chapter 1321.[1] As neither Interim nor FSF had obtained a license pursuant to R.C. Chapter 1321, the court found the loans to be void under R.C. 1321.02.   This holding prohibited the appellants from collecting "any principal, interest, or charges."

---

1.   To invoke R.C. Chapter 1321 against the $6,000 loan, the court had first to determine that the loan was in fact two $3,000 loans—one from FSF and one from Interim.

{¶ 7}  The case is now before this court upon our allowance of Interim and FSF's discretionary appeal.

## II

{¶ 8}  Rancman argues, and the courts below held, that certain contingent advances on settlements are impermissible loans because the appellants incurred virtually no risk in the transactions and because the potential profit on the advances exceeds the legally permissible interest rate.  Interim and FSF adamantly contend that the advances are investments, not loans, and note that there is no statute limiting the return on an investment.

{¶ 9}  It is unnecessary for the resolution of this case to determine the threshold level of risk necessary for a contingent advance to be treated as an investment rather than a loan.  The advances here are void as champerty and maintenance regardless of whether they are loans or investments.

{¶ 10}  "Maintenance" is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. "Champerty" is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues.  14 Ohio Jurisprudence 3d (1995), Champerty and Maintenance, Section 1. "The doctrines of champerty and maintenance were developed at common law to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law."  14 Corpus Juris Secondum (1991), Champerty and Maintenance, Section 3. See, also, *Bluebird Partners, L.P. v. First Fid. Bank, N.A.* (2000), 94 N.Y.2d 726, 709 N.Y.S.2d 865, 731 N.E.2d 581.

{¶ 11}  The ancient practices of champerty and maintenance have been vilified in Ohio since the early years of our statehood.  *Key v. Vattier* (1823), 1 Ohio 132, 136, 1823 WL 8.  We stated in *Key* that maintenance "is an offense against public justice, as it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression."  Id. at 143.  We have held the assignment of rights to a lawsuit to be void as champerty.  *Brown v. Ginn* (1902), 66 Ohio St. 316, 64 N.E. 123, paragraph two of the syllabus.  We have also said "that the law of Ohio will tolerate no lien in or out of the [legal] profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies, encourages, promotes, or extends litigation."  *Davy v. Fid. & Cas. Ins. Co.* (1908), 78 Ohio St. 256, 268–269, 85 N.E. 504.

{¶ 12}  In recent years, champerty and maintenance have lain dormant in Ohio courts.  Historically, champertors and maintainors were attorneys, and these practices by attorneys have been regulated by DR 5–103 of the Code of Professional Responsibility.  See, e.g., *Disciplinary Counsel v. Williams* (1990), 51 Ohio St.3d 36, 553 N.E.2d 1082.  Nonetheless, the codification of these doctrines for attorney discipline did not remove them from the common law.  "[T]he doctrines of champerty and maintenance appear in numerous Ohio cases as contract defenses * * *."  *Tosi v. Jones* (1996), 115 Ohio App.3d 396, 400, 685 N.E.2d 580, appeal dismissed upon the application of appellant in (1997), 78 Ohio St.3d 1430, 676 N.E.2d 535.

{¶ 13}  For example, the Sixth District Court of Appeals voided an agreement as champerty and maintenance where a company in the business of locating heirs to unclaimed estates contracted with potential heirs for one-third of their eventual inheritance.  *Finders Diversified, Inc. v. Baugh* (Apr. 20, 1984), Lucas App. No. L–83–424, 1984 WL 7841.  That court voided the agreement because the company agreed to pay the costs associated with locating and collecting from the estate (maintenance) and because the company would receive a stake in the heirs' claims (champerty).

{¶ 14}  The advances sub judice constitute champerty because FSF and Interim sought to profit from Rancman's case.  They also constitute maintenance because FSF and Interim each purchased a share of a suit to which they did not have an independent interest;  and because the agreements provided Rancman with a disincentive to settle her case.

{¶ 15}  The $6,000 advance, for example, gave FSF the right to the first $16,800 of the settlement after fees, expenses, and superior liens, if the State Farm case settled within 12 months.  If there had not been any superior liens on Rancman's settlement and her attorney had charged a 30-percent contingency fee, Rancman would not have received any funds from a settlement of $24,000 or less.  This calculation gives Rancman an absolute disincentive to settle for $24,000 or less because she would keep the $6,000 advance regardless of whether she settles with State Farm and would not receive any additional money from a $24,000 settlement.

{¶ 16}  Under the same facts, the $1,000 Interim advance would provide a settlement disincentive of an additional $4,000.  Thus, with no liens and a 30-percent attorney fee, the $7,000 advanced to Rancman effectively bars her from considering a settlement offer of up to $28,000.

{¶ 17}  These advances also affect settlement offers greater than $28,000.  Suppose Rancman decides that she will settle for nothing less than $80,000 minus attorney fees.  Because of the obligation to repay the advances, she would refuse

to settle until State Farm offers $98,000.[2]  If the settlement advance agreements are enforced, Rancman must receive an $18,000 premium on a settlement offer to have the same incentive to settle that she would have had if she had not entered into the agreements with FSF and Interim.  This can prolong litigation and reduce settlement incentives—an evil that prohibitions against maintenance seek to eliminate.  Cf. *Cleveland Bar Assn. v. Nusbaum* (2001), 93 Ohio St.3d 150, 151, 753 N.E.2d 183 (Lundberg Stratton, J., concurring).

{¶ 18}  Equally troubling is a champertor's earning a handsome profit by speculating in a lawsuit and by potentially manipulating a party to the suit.  *Key*, 1 Ohio at 146.  The FSF agreement reads, "[Rancman] ACKNOWLEDGES AND FULLY UNDERSTANDS THAT FSF MAY, WILL, AND SHOULD MAKE A SUBSTANTIAL PROFIT ON THIS AGREEMENT."  However, a lawsuit is not an investment vehicle.  Speculating in lawsuits is prohibited by Ohio law.  An intermeddler is not permitted to gorge upon the fruits of litigation.

{¶ 19}  Except as otherwise permitted by legislative enactment or the Code of Professional Responsibility, a contract making the repayment of funds advanced to a party to a pending case contingent upon the outcome of that case is void as champerty and maintenance.  Such an advance constitutes champerty and maintenance because it gives a nonparty an impermissible interest in a suit, impedes the settlement of the underlying case, and promotes speculation in lawsuits.  The advances made to Rancman constituted champerty and maintenance.  Consequently, the contracts requiring their repayment are void and shall not be enforced.  *Gen. Film Co. v. Sampliner* (C.A.6, 1916), 232 F. 95, 99.

{¶ 20}  Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK and CHRISTLEY, JJ., concur separately.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for COOK, J.

---

**CHRISTLEY, J., concurring.**

{¶ 21}  Although I concur with the majority's judgment, I write separately to emphasize the following point.

{¶ 22}  It appears from the record that neither party has addressed whether the doctrines of champerty and maintenance are applicable to the matter

---

2.  This number is the combination of the $80,000 Rancman desires plus the $10,800 and $1,800 premiums she must pay to FSF and Interim, respectively, together with attorney fees on these premiums.

currently before the court. Accordingly, I believe a better course of action would have been to allow the parties the opportunity to submit additional briefing on this issue. Having said that, however, I agree with the majority's ultimate conclusion that the protections embodied in champerty and maintenance prohibit contracts such as the ones presented here.

RESNICK, J., concurs in the foregoing concurring opinion.

———————

Slater & Zurz and Walter Kaufmann, for appellee.

Brouse McDowell, L.P.A., Robert M. Stefancin and Rebecca A. Kucera, for appellants Interim Settlement Funding Corp. and Future Settlement Funding Corp.

Connie J. Elliano, for appellant Future Settlement Funding Corp.

Todd W. Sleggs & Associates and Todd W. Sleggs, urging reversal for amicus curiae Todd W. Sleggs.

Andrew T. Savage, urging reversal for amici curiae LawFunds, L.L.C.; Cambridge Management Group, L.L.C.; Capital Transaction Group, Inc.; Expert-Funding.com Corporation; Funding Office, Inc.; Future Funding of Utah, Inc.; Future Settlement Funding of South Carolina, Inc.; Budget Fast Cash, L.L.C.; LawsuitFunding.com, Inc.; Litigation Funding, Inc.; Plaintiff Support Services, Inc.; Pre–Settlement Funding Corp.; and Shree Rajendra Corp., d.b.a. Settlement Financial Group.