WEST BROAD CHIROPRACTIC, APPELLANT, *v*. AMERICAN FAMILY
INSURANCE, APPELLEE.
[Cite as *W. Broad Chiropractic v. Am. Family Ins*.,
122 Ohio St.3d 497, 2009-Ohio-3506.]

*Assignment of settlement proceeds — Relevance of R.C. 3929.06 — Judgment
affirmed.*

(Nos. 2008-1396 and 2008-1489 — Submitted April 21, 2009 — Decided
July 23, 2009.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County,
No. 07AP-721, 2008-Ohio-2647.

_____

LUNDBERG STRATTON, J.

{¶ 1} We must determine whether Kristy Norregard, who was injured in an automobile accident but who did not file suit or obtain a judgment against the tortfeasor, may assign her right to proceeds from a prospective settlement or judgment to appellant, West Broad Chiropractic ("West Broad"), in exchange for medical care she received from West Broad for injuries resulting from the accident.

{¶ 2} The Tenth District Court of Appeals refused to enforce the assignment of proceeds. The appellate court certified that its judgment was in conflict with the judgments of other appellate districts. We agreed and accepted the following two certified conflicts for review:

{¶ 3} "May a person who has been injured in an automobile accident but who has not yet established liability for the accident and a present right to settlement proceeds, but who may have that right in the future, even if the future existence of the proceeds is conditional, assign that right, in whole or in part, to another under Ohio law?"

**{¶ 4}** "Does R.C. 3929.06 preclude an assignee of prospective settlement proceeds from bringing a direct action against a third party insurer, who had prior notice of such written assignment, after the insurer distributed settlement proceeds in disregard of that written assignment?" *W. Broad Chiropractic v. Am. Family Ins.*, 119 Ohio St.3d 1469, 2008-Ohio-4911, 894 N.E.2d 330.

**{¶ 5}** For the reasons that follow, we answer the first question in the negative. A person who has been injured in an accident but who has not yet established liability for the accident and a present right to settlement proceeds may not assign the right to future proceeds of a settlement if the right does not exist at the time of the assignment.

**{¶ 6}** We answer the second question in the affirmative. R.C. 3929.06 precludes an assignee of prospective settlement proceeds from bringing a direct action against a third-party insurer after the insurer distributed settlement proceeds.

**{¶ 7}** Consequently, we affirm the judgment of the court of appeals.

### Facts and Procedural History

**{¶ 8}** Kristy Norregard was injured in an automobile accident on July 6, 2002. Three days later, she sought treatment for her injuries at West Broad Chiropractic. At that time, she executed a document entitled "Assignment of Right to Receive Benefits and/or Proceeds of Settlement or Judgment" to assign her right to receive from the tortfeasor's insurance company compensation for these injuries in exchange for her treatment. Payment was to be made directly to West Broad before any payment was made to Norregard.

**{¶ 9}** Almost two years later, on April 30, 2004, West Broad gave notice of the assignment to appellee, American Family Insurance ("AFI"), which was believed to have insured the driver of the automobile involved in the accident with Norregard. The notice requested that AFI name West Broad as a co-endorser

on any disbursement check issued or to issue a separate check payable to West Broad directly. The notice did not identify the amount due West Broad.

{¶ 10} In January 2006 and prior to filing any lawsuit, Norregard settled her claim for injuries with AFI. AFI disbursed the settlement proceeds directly to Norregard.

{¶ 11} West Broad filed an action against AFI seeking a declaration that the assignment was valid and enforceable and that AFI was obligated to pay West Broad for the treatment provided to Norregard valued at $3830. The trial court held that the assignment was enforceable and entered judgment for West Broad.

{¶ 12} The Tenth District Court of Appeals reversed the judgment of the trial court, concluding that Norregard had no "right in being" when she made the assignment. *W. Broad Chiropractic v. Am. Family Ins*., Franklin App. No 07AP-721, 2008-Ohio-2647, 2008 WL 2246653, ¶ 6. Instead, West Broad had only a possibility of future settlement proceeds from AFI. Id. Furthermore, the court determined that Norregard had no enforceable rights against AFI under R.C. 3929.06 until she obtained a judgment against the tortfeasor. Thus, the court concluded, the assignment was ineffective, and it remanded the cause with instructions to enter judgment in favor of AFI. Id at ¶18.

{¶ 13} The appellate court certified that its judgment was in conflict with judgments of the courts of appeals in the First, Ninth, Eleventh, and Twelfth Districts. We determined that a conflict does exist on both issues. We accepted West Broad's discretionary appeal on the same issues and consolidated the cases. *W. Broad*, 119 Ohio St.3d 1469, 2008-Ohio-4911, 894 N.E.2d 330.

## Assignment of Settlement Proceeds

{¶ 14} An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration. *Hsu v. Parker* (1996), 116 Ohio App.3d 629, 632, 688 N.E.2d 1099. A vested right in the assigned property is

required to confer a complete and present right on the assignee. *Christmas v. Griswold* (1858), 8 Ohio St. 558, 563-564.

{¶ 15} When Norregard entered into the agreement with West Broad, she had a cause of action against the tortfeasor that had accrued at the time of the accident. See *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121; *Cincinnati v. Hafer* (1892), 49 Ohio St. 60, 65, 30 N.E. 197. However, Norregard had not filed a claim based on that cause of action. She had not established liability or the right to damages. No settlement proceeds existed at the time of the assignment.

{¶ 16} Nevertheless, Norregard executed a document that purported to assign to West Broad her "right to receive or collect any check or monies offered for compensation to [her] by any person for any injury for which [she] received treatment from West Broad Chiropractic." Because no settlement proceeds existed at the time of the assignment and Norregard then had no right to any funds, she had no rights to assign. Thus, we hold that the agreement could not operate as an assignment because Norregard had no right in any settlement proceeds to transfer to West Broad.

{¶ 17} West Broad contends that Norregard's expectation of a settlement was assignable even though it was contingent upon proving liability and damages. West Broad, however, relies on cases in which the expected interest was based upon real property or contingent estates of inheritance of a property interest that was in existence. See *Moore v. Foresman* (1962), 172 Ohio St. 559, 565, 18 O.O.2d 123, 179 N.E.2d 349; *Hite v. Hite* (1929), 120 Ohio St. 253, 260-261, 166 N.E. 193. In this case, Norregard had not asserted a claim against the tortfeasor and had not established liability or the right to damages. The right to proceeds of a future settlement was unresolved. Consequently, Norregard's right to any settlement proceeds was merely a possibility at the time she executed the assignment to West Broad.

{¶ 18} In *Pennsylvania Co. v. Thatcher* (1908), 78 Ohio St. 175, 85 N.E. 55, syllabus, the court held that an equitable assignment in the prospective proceeds of a settlement could not be enforced by the assignee against the tortfeasor in a suit at law. In *Thatcher*, the victim of a railroad accident attempted to assign to his attorney the proceeds of his claim, although no cause of action had been filed. The court acknowledged that the assignee may have a right to recover from the assignor; however, the assignment was not legally binding in a suit for money damages against a third party who had not agreed to the terms of the assignment. Id. at 189.

{¶ 19} *Thatcher* rejected the notion that notice of an assignment could legally obligate an unrelated third party in the absence of a contractual or other relationship between the parties, particularly when the notice assigned "a portion of whatever may be paid in suit or settlement." Id., 78 Ohio St. at 175, 85 N.E. 55. The court held that a notice so indefinite was insufficient to reach the funds in the hands of a third-party tortfeasor. Id. at paragraph two of the syllabus. *Thatcher* also reasoned that giving effect to such an assignment would introduce the interests of a third party who had not been involved in the accident into settlement negotiations and may compromise a settlement between the injured person and the tortfeasor. Id. at 191. In addition, an assignment occurs only when the fund or property to be transferred exists. However, there are no settlement proceeds until the tortfeasor simultaneously pays funds in exchange for a release. Id.

{¶ 20} We find the legal reasoning of *Thatcher* still persuasive a century later. Consistent with *Thatcher*, because Norregard had no present right to any settlement funds at the time of the assignment, she had no rights to assign. West Broad had a contract that may be enforceable against Norregard, but it is not legally binding upon AFI.

5

{¶ 21} The conflict cases relied on public policy reasons to justify upholding such assignments. Some districts believed that such assignments would encourage settlement and avoid litigation. See *Roselawn Chiropractic Ctr., Inc. v. Allstate Ins. Co.,* 160 Ohio App.3d 297, 2005-Ohio-1327, 827 N.E.2d 331, ¶ 16; *Cartwright Chiropractic v. Allstate Ins. Co.,* Butler App. No. CA2007-06-143, 2008-Ohio-2623, 2008 WL 2231651, ¶ 9. They also reasoned that the assignments would promote timely medical treatment for injured persons who may not otherwise be able to pay, while at the same time assuring medical-care providers that they will be compensated. *Cartwright* at ¶ 9, 16; *Akron Square Chiropractic v. Creps*, Summit App. No. 21710, 2004-Ohio-1988, 2004 WL 840131, ¶ 12, fn. 2; *Roselawn*, ¶19-20.

{¶ 22} On the other hand, there are circumstances under which such assignments might encourage and promote litigation and discourage settlement. A chiropractor or other assignee expects full payment and lacks interest in negotiating the amount of the debt. Likewise, the third-party insurer lacks the ability to dispute the amount or reasonableness of the charges. The insurer must take these factors into account when settling the claim, and the result may be less to the injured party, forcing him or her to litigate in hopes of obtaining a greater recovery. Attorneys may therefore be deterred from taking smaller claims when the proceeds are taken by assignees, leaving little to no funds for the injured party or the attorney's fee.

{¶ 23} Furthermore, if an injured person executes multiple assignments to a variety of creditors, the third-party insurer may be faced with determining the priority of assignments and how to distribute settlement proceeds pro rata among numerous assignees if the debt exceeds the amount of the settlement. Generally, the injured person is represented by counsel, who receives the settlement funds and who may negotiate a lesser payment with his client's creditors. West Broad's proposition, however, places the obligation on the insurer to identify and locate

each assignee at the time of settlement to determine the current liability and may subject the insurer to multiple lawsuits.

{¶ 24} Upholding the legality of such assignments opens the door for other creditors to seek debt protection through assignments: the pharmacy, the automobile repair shop, other medical providers. If the injured person executes an assignment to satisfy a debt that is not related to the accident, i.e., a landlord or consumer debt, the insurer would be thrust into a credit situation that is completely unrelated to the underlying accident, and the unrelated third party becomes a de facto collection agent that must prioritize and pay debts to avoid personal liability.

{¶ 25} Finally, we disfavor such assignments based upon their similarities to champertous agreements that are void as a matter of law. See *Rancman v. Interim Settlement Funding Corp.*, 99 Ohio St.3d 121, 2003-Ohio-2721, 789 N.E.2d 217, ¶ 19. Here, West Broad agreed to forgo payment for Norregard's treatment in exchange for an interest in future settlement proceeds. Although Norregard would remain liable for her medical bills if she did not settle, under the circumstances of this case, West Broad's interest in potential future proceeds could influence Norregard's interest in resolving her case, including delaying and holding out for a greater settlement because she had no current obligation to pay for her medical treatment.

{¶ 26} Therefore, our answer to the first certified question is no. A person may not assign the right to the future proceeds of a settlement if the right to the proceeds does not exist at the time of the assignment. Norregard had no present right to any settlement funds at the time of the assignment and thus had no rights to assign. West Broad had a contract that may be enforceable against Norregard, but it is not legally binding upon AFI.

**Application of R.C. 3929.06**

**{¶ 27}** The second question for review asks whether R.C. 3929.06 precludes an assignee from bringing a direct action against the third-party insurer who had prior notice of the assignment but nevertheless paid the settlement proceeds contrary to the written assignment.

**{¶ 28}** R.C. 3929.06(B) precludes an injured person from bringing a civil action against the tortfeasor's insurer until the injured person has first obtained a judgment for damages against the insured and the insurer has not paid the judgment within 30 days.

**{¶ 29}** West Broad contends that R.C. 3929.06 applies only when the insurer does not pay insurance proceeds after liability has been judicially determined. The conflict cases likewise interpreted R.C. 3929.06 more literally. *Akron Square* notes that the statute does not mention assignments, and the court of appeals refused to read into the statute a prohibition on assigning potential settlement proceeds. 2004-Ohio-1988, 2004 WL 840131, ¶ 10. *Cartwright* rejected the application of R.C. 3929.06 because the injured party in that case settled without having to file suit. Thus, that court considered the statute inapplicable to the facts. 2008-Ohio-2623, 2008 WL 2231651, ¶ 18-19.

**{¶ 30}** The court of appeals in this case acknowledged that the statute does not directly address written assignments. *W. Broad*, 2008-Ohio-2647, 2008 WL 2246653, ¶ 17. Nevertheless, the court, applying the law of assignments to the statute, reasoned that if an injured person has no direct action against the tortfeasor's insurer until 30 days after judgment and an injured person may assign only those rights that presently exist, then it follows that at the time of the assignment, Norregard had no direct right of recovery against AFI that could be assigned to West Broad. Id. at ¶ 16.

**{¶ 31}** This approach was also applied in *Knop Chiropractic, Inc. v. State Farm Ins. Co.*, Stark App. No. 2003CA00148, 2003-Ohio-5021, 2003 WL 22176668. In that case, a chiropractor filed an action to enforce a patient's

assignment of prospective claim proceeds against a third-party automobile insurer. The court in *Knop* concluded, per R.C. 3929.06, that the assignment was not enforceable against State Farm because it was created before the injured person had filed a civil action against the tortfeasor. Thus, the assignment was not founded on a right in being and was not enforceable. Id. at ¶ 19, 20.

{¶ 32} The underlying premise of R.C. 3929.06 reinforces our conclusion that Norregard had no existing right in proceeds to assign to West Broad. Therefore, our answer to the second certified question is yes: R.C. 3929.06 precludes an assignee of prospective settlement proceeds from bringing a direct action against a third-party insurer after the insurer has distributed settlement proceeds in disregard of the written assignment.

## Conclusion

{¶ 33} When Norregard executed the agreement with West Broad, she had no right in proceeds from a prospective settlement or judgment. Because there must be an existing right in order for there to be a valid assignment, Norregard had nothing to assign that would have created a right in the assignee. At most, West Broad had a contractual right against Norregard for medical bills, but no legal right to enforce the agreement against AFI.

{¶ 34} In addition, Norregard had no direct right of action against AFI at the time of the assignment because she had not met the terms of R.C. 3929.06. Thus, because West Broad's rights as assignee are no greater than Norregard's, West Broad was also prohibited from filing a direct action against AFI.

{¶ 35} Consequently, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'DONNELL, J., concurs.

O'CONNOR and LANZINGER, JJ., concur in the judgment and the answers to the certified questions only.

MOYER, C.J., and PFEIFER and CUPP, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 36} I dissent from the judgment because I find the assignment between Kristy Norregard and West Broad Chiropractic ("West Broad") to be enforceable. Therefore I would hold that West Broad should be permitted to recover from American Family Insurance for its failure to pay West Broad pursuant to the assignment. Additionally, I would hold that R.C. 3929.06 does not prohibit an assignee of an injured person from filing suit to collect from the insurer on the assignment when the insurer has disregarded the assignment while distributing settlement proceeds.

**I**

*Assignment of the right to contingent future settlement proceeds*
*is permitted as an equitable assignment*

{¶ 37} In the first certified-conflict issue, we are asked whether an injured party may assign its right to conditional, future compensation for its injuries when the injured party has not yet established the liability of the tortfeasor or a present right to such compensation. I would answer this question in the affirmative, based upon our prior cases concerning assignments of future interests. Therefore, I dissent from the majority's holding on the first certified-conflict issue.

{¶ 38} The lead opinion states that in order to validly assign a contingent interest, the assignor must have a "property right that [is] in existence." According to the lead opinion, Norregard's assignment of any future compensation for her personal injuries to West Broad for chiropractic care is invalid because Norregard had no present right to settlement proceeds, nor did any proceeds exist. However, in attempting to explain our precedent, the lead opinion actually imposes requirements for an equitable assignment that do not exist in our case law. These new requirements unduly constrict the ability to assign a future interest.

10

**{¶ 39}** A contingent, future property interest is an uncertain right at best. This is so because the existence of the property in question is speculative, its existence depending not only on the occurrence of some specified future condition but also on the caprice of fate. Additionally, contingent interests, by definition, do not vest a present property right in the holder of the interest, although they may give rise to rights enforceable in equity. Therefore, in general, such assignments were not enforced as contracts at law because an expectancy was deemed too intangible. *Hite v. Hite* (1929), 120 Ohio St. 253, 262-264, 166 N.E. 193; and *Moore v. Foresman* (1962), 172 Ohio St. 559, 566, 18 O.O.2d 123, 179 N.E.2d 349; *Pennsylvania Co. v. Thatcher* (1908), 78 Ohio St. 175, 188, 85 N.E. 55. However, a right to enforce assignments of future interests was recognized in equity. Id. at 188-189, 85 N.E. 55. In order for an assignment to be enforced in equity, we require that the assignor have an "expectancy" in the object of the assignment. *Hite*, 120 Ohio St. at 260-261, 166 N.E. 193. At common law, assignments were held to a stricter requirement: that the assignor have a "right in being" in the object of the assignment. *Needles v. Needles* (1857), 7 Ohio St. 432, 442-443. A right in being is a cognizable expectation, founded on some provision of law or instrument or some legal act, that in the future, the assignor will possess the object of the assignment. Id.

**{¶ 40}** When such an expectancy or right in being exists, certain privileges belong to the holder of the contingent interest, such as the ability to assign the contingent interest. Id.; *Hite*, 120 Ohio St. at 260-261, 166 N.E. 193. These assignments will be enforced in equity once the contingency has occurred and property rights to the subject matter of the assignment vest in the assignor. *Hite* at 262-264, 166 N.E. 193; *Moore*, 172 Ohio St. at 566, 18 O.O.2d 123, 179 N.E.2d 349; *Thatcher*, 78 Ohio St. at 188-189, 85 N.E. 55. (Here, Norregard is the "assignor," West Broad is the "assignee," and American Family is the "debtor.")

**{¶ 41}** In this case, Norregard's expectation of compensation for her injury rested on the cognizable provision at law of the right to seek redress for injuries already sustained. Norregard had an expectancy and a right in being in the nature of a legally recognized remedy for her injuries. Her future interest was contingent on her success in pursuing that right. Thus, her expectation is founded in relief recognized in law and may be assigned.

**{¶ 42}** The premise of the lead opinion—that property or a property interest must exist—is contradicted by our precedent concerning equitable assignments. In *Gen. Excavator Co. v. Judkins* (1934), 128 Ohio St. 160, 166, 190 N.E. 389, which is ignored by the lead opinion, we enforced an equitable assignment for the future proceeds of a contract, although the work had not yet been performed and no proceeds were due. We held that an equitable assignment is created by "an intention on one side to assign and an intention on the other to accept, supported by sufficient consideration, and disclosing a present purpose to make an appropriation of a debt or fund." Id. at 165, 190 N.E. 389.

**{¶ 43}** As is apparent from the facts in *Gen. Excavator*, the assignor did not have a present right to the property at issue, nor was the property in existence at the time the assignment was made. *Gen. Excavator Co.*, 128 Ohio St. at 165-166, 190 N.E. 389. No work had been performed on the contract, so the assignor had received no payment and had no right to payment. Id. Thus, as to the first element of the assignment—the "debt or fund"—the assignor had merely an expectation interest. Yet the court in *Gen. Excavator* held that the assignment was valid. Id. at 167, 190 N.E. 389. It was apparently sufficient for the court that the property would exist upon the exercise of an expectancy or right in being, namely the assignor's privilege to perform the work specified in a contract. That is, the assignor had an assignable interest in the future proceeds of the contract, although those proceeds would not exist until the assignor performed work under the contract and received payment for that work. Thus, as long as the assignor

has the present purpose to make an appropriation from a fund—even a fund that does not exist and to which the assignor has no present right—then the first element of *Gen. Excavator* is met.

{¶ 44} In this case, no one questions the existence of the other elements of a valid equitable assignment under *Gen. Excavator*: the intent of the parties to create an assignment or the underlying consideration. *Gen. Excavator Co.*, 128 Ohio St. at 165, 190 N.E. 389. Rather, the appellee and the majority deny the right of Norregard to the funds at issue. However, *Gen. Excavator* indicates that the assignor need not have a present right to funds, nor do the funds need to be in existence. *Gen. Excavator* is analogous to this case. There is no meaningful difference between assigning the right to the uncertain proceeds of a future contract and assigning the right to proceeds of a future lawsuit or settlement. In either case, the property depends for its existence on the assignor's successful pursuit of "rights in being." Accordingly, as in *Gen. Excavator*, we have here a valid equitable assignment without a present property interest or property in existence. Therefore, I would hold that the elements of an equitable assignment under *Gen. Excavator* have been met in this case.

{¶ 45} The cases cited in the lead opinion, *Hite*, 120 Ohio St. at 253, 166 N.E. 193, and *Moore*, 172 Ohio St. at 559, 18 O.O.2d 123, 179 N.E.2d 349, do not alter this result. Neither *Hite* nor *Moore* supports the premise of the lead opinion that the only expectations that may be assigned are those in which the future interest is based upon "a property right that was [already] in existence." In fact, both *Hite* and *Moore* recognized that a future interest based on rights and property not in actual existence could be assigned in equity. *Hite* at 260-261, 166 N.E. 193; *Moore*, paragraph one of the syllabus.

{¶ 46} In *Hite*, the assignor assigned his expected inheritance from his mother's estate to his sister, the assignee. *Hite*, 120 Ohio St. at 256, 166 N.E. 193. The *Hite* court held that the assignment was not enforceable at law, but was

enforceable in equity, because it would have been inequitable to allow the assignor to retain both the inheritance and the consideration given by the assignee in the event that the assignor actually inherited the res, i.e. the subject matter, of the assignment. Id. at 260-261, 166 N.E. 193. The *Hite* court enforced the assignment, even though at the time of the assignment, the assignor had no present rights to the property, the property did not exist when the assignment was made, and the assignor's expectancy had only "potential existence," contingent on the occurrence of a future event. Id. Thus, *Hite* is no support for the conclusion that an expectation interest can be assigned only when it is a "property interest [already] in existence."

{¶ 47} In *Moore*, we came to the unsurprising conclusion that because Ohio law recognized a protectable right to equitable or beneficial ownership of property held in trust (although the beneficiary had no present legal ownership), the beneficiary could assign that interest in equity. *Moore*, 172 Ohio St. at 566, 18 O.O.2d 123, 179 N.E.2d 349. The holding in *Moore* was premised on the already established rule that a contingent future interest was alienable and the widely recognized rule that "[e]quitable or beneficial ownership and interest in securities is alienable and may be conveyed." Id. at paragraph two of the syllabus. Simply put, *Moore* did nothing more than recognize that an equitable ownership in securities is alienable and therefore can be assigned in equity. *Moore* does not affect the issue before us beyond providing another example of the assignability of a contingent future interest.

{¶ 48} The lead opinion reads *Hite* and *Moore* to require a present interest in property or the existence of the property before a contingent interest may be assigned. Yet, as *Hite* and *Moore* illustrate, contingent interest will rarely—if ever—involve presently existing property rights or property in actual existence. The *Hite* court expressly recognized that the assignor's right to property was based upon a "mere expectancy" of that right, that the assignor had no existing

14

right, and that no property existed at the time of the assignment. *Hite*, 120 Ohio St. at 260-261, 166 N.E. 193. It is hard to imagine which, if any, contingent interests will remain assignable following the majority's holding.

{¶ 49} Furthermore, it is apparent from the number of cases addressing this type of assignment that such an assignment is a common means for injured persons to receive medical treatment while waiting for monetary relief.[1] Injured persons have an expectation of relief that equity recognizes without first requiring instigation of courtroom proceedings.

{¶ 50} Therefore, I would hold that the law permits West Broad to enforce its equitable assignment. Courts have historically enforced such assignments once the contingency has occurred and the object of the assignment has come into existence. *Hite*, 120 Ohio St. at 262-264, 166 N.E. 193; *Moore*, 172 Ohio St. at 566, 18 O.O.2d 123, 179 N.E.2d 349; *Thatcher*, 78 Ohio St. at 188, 85 N.E. 55. The question remains whether West Broad may enforce the assignment against American Family Insurance, a third party to the assignment.

*After notice, the assignee may sue a third-party debtor*

*who did not pay pursuant to the assignment*

{¶ 51} The majority holds that equitable assignments cannot be enforced against third parties who did not consent to the agreements. But this holding is

---

1. The parties have cited six Ohio court of appeals cases, two cases from the courts of last resort of other states, and several state and federal trial court cases, including the following: *Akron Square Chiropractic v. Creps*, Summit App. No. 21710, 2004-Ohio-1988, 2004 WL 840131; *Cartwright Chiropractic v. Allstate Ins. Co.*, Butler App. No. CA2007-06-143, 2008-Ohio-2623, 2008 WL 2231651; *Fletcher v. Nationwide Mut. Ins. Co.*, Darke App. No. 02CA1599, 2003-Ohio-3038, 2003 WL 21360646; *Knop Chiropractic, Inc. v. State Farm Ins. Co.*, Stark App. No. 2003CA0018, 2003-Ohio-5021, 2003 WL 22176668; *Mt. Lookout Chiropractic Ctr., Inc. v. Motley* (Dec. 1, 1999), Hamilton App. No. C-980987, 1999 WL 1488971; *Roselawn Chiropractic Ctr., Inc. v. Allstate Ins. Co.*, 160 Ohio App.3d 297, 2005-Ohio-1327, 827 N.E.2d 331; *Charlotte-Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co.* (1995), 340 N.C. 88, 455 S.E.2d 655; *Hernandez v. Suburban Hosp. Assn., Inc.* (1990), 319 Md. 226, 572 A.2d 144; *Midtown Chiropractic v. Illinois Farmers Ins. Co.* (Ind.2006), 847 N.E.2d 942; *Bernstein v. Allstate Ins. Co.* (1968), 56 Misc.2d 341, 288 N.Y.S.2d 646; and *In re Petry* (Bankr.N.D.Ohio 1986), 66 B.R. 61.

directly contrary to precedent established in *Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Volkert* (1898), 58 Ohio St. 362, 367, 50 N.E. 924, and *Gen. Excavator*, 128 Ohio St. 160, 190 N.E. 389. Furthermore, the lead opinion's reliance on the reasoning in *Thatcher*, 78 Ohio St. 175, 85 N.E. 55, is misplaced, because *Thatcher* addressed only money damages in an action at law, and the reasoning cited from *Thatcher* is dicta. Id. at syllabus.

**{¶ 52}** In *Volkert*, an attorney had assigned his fee from an unpaid judgment to the assignee, but the judgment debtor disregarded the assignment and paid the attorney's client instead. *Volkert*, 58 Ohio St. at 368, 50 N.E. 924. We held that the attorney's assignment was enforceable in equity. Id. at 369-371, 50 N.E. 924. We also held that equity permitted the assignee to enforce the assignment against the third-party debtor, even though it had not consented to pay pursuant to the assignment. Id. at 372, 50 N.E. 924. Indeed, we required the debtor, which knew of the assignment, to pay the assignee, despite having already paid the full debt amount to the client; "the [debtor], while it had a full right to compromise, was simply required to deal with all parties in interest, including those holding a valid property interest in the judgment, and entitled to a portion of the proceeds." Id. at 377, 50 N.E. 924.

**{¶ 53}** We applied the rule in *Volkert* in *Gen. Excavator* in an opinion issued well after *Thatcher*, 78 Ohio St. 175, 85 N.E. 55. *Gen. Excavator*, 128 Ohio St. at 165, 190 N.E. 389. In *Gen. Excavator*, we held, "The consent of a debtor, i.e., the one obligated to an assignor, is not required to an assignment, even though it be for only a part of an entire debt or claim. Such assignment will be enforced against the debtor in equity." Id., citing *Volkert*, 58 Ohio St. at 362, 50 N.E. 924. The majority's holding today improperly displaces the rule of law announced in these cases.

**{¶ 54}** Moreover, *Thatcher* is not controlling or even applicable. The holding of *Thatcher*—that equitable assignments must be enforced in equity and

16

cannot be enforced in actions at law—has no bearing on this case, particularly because of the now defunct distinction between actions at law and at equity. See *Thatcher*, 78 Ohio St. at 187, 85 N.E. 55; Civ.R. 2 ("There shall be only one form of action, and it shall be known as a civil action").

{¶ 55} The *Thatcher* court noted in dicta that under the facts of that case, the suit was "questionable" in equity as well, because of the circumstances of the particular assignment in that case, in which it appeared that a portion of the underlying claim—not the proceeds of settlement—had been assigned (i.e., the assignor had assigned a "chose in action," giving the right to pursue a portion of her cause of action to a third party). Id. at 192, 85 N.E. 55, citing *Weller v. Jersey City, Hoboken & Paterson Street Ry. Co.* (1904), 66 N.J.Eq. 11, 18-19, 57 A. 730. The *Thatcher* court suggested that under such circumstances, the assignee would have no right in equity to enforce his assigned "portion" of the underlying cause of action against the debtor alone because (1) doing so would interject the interests of an uninjured third party into settlement negotiations, undermining the needs of the injured party; and (2) the fund of the resulting assignment would not come into existence until the tortfeasor had been released from liability. Id. at 190-192, 85 N.E. 55.

{¶ 56} This viewpoint likely stems from the then existing rule that although choses in action were generally assignable, choses in action for personal injury were generally not. *Cincinnati v. Hafer* (1892), 49 Ohio St. 60, 66, 30 N.E. 197. And the dicta of *Thatcher* reflect the general policy against champerty and maintenance (i.e., the interference with the maintenance of a lawsuit by a third party who has agreed to assist in the litigation in exchange for a portion of the proceeds) by prohibiting assignments that may undermine the needs of the injured party, needlessly complicate litigation, and frustrate settlement by introducing a self-interested third party to the litigation and settlement process. See, e.g.,

*Rancman v. Interim Settlement Funding Corp.*, 99 Ohio St.3d 121, 2003-Ohio-2721, 789 N.E.2d 217, at ¶ 10.

{¶ 57} Thus, *Thatcher* addresses, in dicta, the undesirability of permitting equitable assignment of choses in action (or portions of the underlying cause of action) for personal-injury torts. Yet Norregard did not assign her injury or right of action against the tortfeasor; she assigned her right to settlement proceeds. There is an important difference between assigning a cause of action and assigning the proceeds from future pursuit of that cause of action. The former would insert a self-interested third party into the litigation and raise concerns of champerty. The latter imparts no cognizable right in the litigation of the cause of action to the third party and gives the third party an enforceable right only to the extent that there are proceeds from resolution of the cause of action. This distinction has been recognized as significant by the courts of last resort of at least three other states, as appellant points out. *Charlotte-Mecklenburg Hosp. Auth.*, 340 N.C. at 91, 455 S.E.2d 655; *Achrem v. Expressway Plaza Ltd. Partnership* (1996), 112 Nev. 737, 740-741, 917 P.2d 447; *Hernandez*, 319 Md. at 235, 572 A.2d 144. Each of those courts has permitted assignments similar to those in this case.

{¶ 58} Accordingly, the assignment in this case—of the proceeds of a future settlement—does not raise the concerns noted in *Thatcher* and *Rancman*: the assignee will not have a right to be involved in the litigation of the injury claim or the resulting settlement discussion, and the assignment will not compromise the ability of the tortfeasor to settle with the injured party.

{¶ 59} Therefore, I would hold that the rule in *Volkert* is the proper rule to apply and that West Broad may recover from American Family Insurance, which had notice of the assignment but did not pay according to its terms.

**II**

18

*R.C. 3929.06 does not bar a lawsuit by an assignee against a third-party insurer*
*who paid settlement proceeds in disregard of an assignment of which it had notice*

**{¶ 60}** With regard to the second certified issue, the lead opinion reasons that R.C. 3929.06 precludes an assignee from suing an insurer who paid settlement proceeds in disregard of an assignment of which it had notice. I disagree. Courts are charged to apply statutes as plainly written. *MedCorp, Inc. v. Ohio Dept. of Job & Family Servs.*, 121 Ohio St.3d 622, 2009-Ohio-2058, 906 N.E.2d 1125, ¶ 9 ("When construing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous"). And R.C. 3929.06(B) is plainly inapplicable to the situation at hand.

**{¶ 61}** R.C. 3929.06 provides:

**{¶ 62}** "(A) (1) If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.

**{¶ 63}** "(2) If, within thirty days after the entry of the final judgment referred to in division (A)(1) of this section, the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount. Subject to division (C) of this section, the

civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor.

{¶ 64} "(B) Division (A)(2) of this section does not authorize the commencement of a civil action against an insurer until a court enters the final judgment described in division (A)(1) of this section in the distinct civil action for damages between the plaintiff and an insured tortfeasor and until the expiration of the thirty-day period referred to in division (A)(2) of this section."

{¶ 65} R.C. 3929.06(B) is the portion of the statute at issue. That portion of the statute requires an injured party to wait 30 days after judgment against a tortfeasor before filing suit against the tortfeasor's insurer to collect on that judgment. The majority does not dispute this reading of R.C. 3929.06. Thus, the statute confines itself to one type of lawsuit—a suit by an injured person to collect from an insurer after a judicial determination of the liability of a tortfeasor—and the prohibition in the statute pertains only to the filing of a lawsuit to collect on such a judgment after 30 days have passed from the final judgment of damages.

{¶ 66} I cannot follow the rationale that stretches the words of R.C. 3929.06 to preclude a suit by an assignee to collect on an assignment when the insurer distributed settlement money in disregard of the assignment. R.C. 3929.06(B) simply does not apply to such a cause of action.

{¶ 67} Moreover, the statute has no application to the facts of this case. The statute applies to suits to collect on a judgment and has no application unless a civil judgment has been entered as described in R.C. 3929.06(A)(1). In this case, there was no judgment or need to collect on a judgment—the insurer settled with the injured party out of court. When the assignee files suit because the insurer paid in disregard of the assignment, the statute, by its own terms, has no application to such a suit.

{¶ 68} At best, the majority's holding with regard to R.C. 3929.06 is a non sequitur. The lead opinion states that the "underlying premise" of R.C.

20

3929.06 confirms the conclusion that the assignment was invalid, because Norregard had no existing property or property rights to assign. The majority then answers the second certified question "yes," concluding that R.C. 3929.06 precludes an assignee from bringing a direct action against a third-party insurer after the insurer has distributed settlement proceeds in disregard of the written agreement. This conclusion is odd because if the majority's reasoning is correct and the assignment was invalid, then West Broad never had a cause of action, and there is nothing for R.C. 3929.06 to preclude. If the majority's view were carried to its logical conclusion, then we should not reach the second certified question— the statute does not preclude the action; rather, the lack of a valid assignment precludes the action against the insurer, and the second certified question is moot. As argued above, I do not agree that the assignment was invalid; therefore, I cannot agree with the majority's holding with regard to R.C. 3929.06.

{¶ 69} Furthermore, the majority ignores the settled law on suits to collect on an improperly paid assignment. An assignee of an equitable assignment may sue a third-party debtor who had notice of the assignment but did not pay accordingly. *Volkert*, 58 Ohio St. 362, 50 N.E. 924, paragraphs one, two, and three of the syllabus; *Gen. Excavator*, 128 Ohio St. at 165, 190 N.E. 389. We have held that the third-party debtor is liable in such circumstances, even when that debtor did not consent to pay pursuant to the assignment. *Volkert*, 58 Ohio St. 362, 50 N.E. 924, paragraph three of the syllabus.

{¶ 70} Therefore, I would hold that R.C. 3929.06(B) does not prohibit an assignee from suing an insurer who distributed settlement proceeds in disregard of an assignment of which it had notice.

## III

{¶ 71} Norregard had a right in being to seek a remedy for her injuries. Therefore, I would hold that her future interest in the proceeds of a lawsuit or settlement was assignable. West Broad, the assignee, is entitled to enforce the

assignment against American Family Insurance, the third-party debtor, under settled law. R.C. 3929.06 does not apply to prohibit West Broad from suing American Family for failure to properly distribute the proceeds under the terms of the assignment.

{¶ 72} Therefore, I dissent.

PFEIFER and CUPP, JJ., concur in the foregoing opinion.

_____

Katz, Teller, Brant & Hild and James F. McCarthy III, for appellant.

Frost, Maddox & Norman Co., L.P.A., and Mark S. Maddox, for appellee.

Boehm, Kurtz & Lowry and John P. Lowry; and Montgomery, Rennie & Jonson and George D. Jonson, urging reversal for amici curiae Ohio State Chiropractic Association and Ohio Osteopathic Association.

Roetzel & Andress, Laura M. Faust, and Jerome G. Wyss, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

_____